UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| David A. McDougall, *Individually and as Trustee for the Next-of-Kin of Decedent Cynthia A. McDougall*,<br><br>　　　　Plaintiff,<br><br>v.<br><br>CRC Industries, Inc., and John Doe Company Defendants #1–10,<br><br>　　　　Defendants. | Case No. _____<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMES NOW, Plaintiff David McDougall, who for his causes of action against Defendants, states and alleges:

## INTRODUCTION

1.　　Inhalant abuse has been known and prevalent in the United States for decades.  Many common household products are used to get high because they are cheap and easily accessible, such as aerosols, glue, cleaning fluids, and gasoline, as examples.

2.　　One type of inhalant that people commonly abuse to get high is computer dust remover sprays.  These products are compressed gas in a can that are used to spray off dust and debris from whatever surface is being cleaned.  However, they contain a gas—difluoroethane—that, if inhaled, causes the person to lose consciousness and control of the bodily movements nearly immediately.

3.    These dust removers are cheap and available at retail locations throughout the United States, meaning anyone with a few dollars can purchase the product to get high.  Dust removers are popular among inhalant abusers, so much so that the companies who design, manufacture, distribute, and sell these products profit greatly as a result.  Manufacturers, distributors, and sellers of dust removers— such as CRC Industries, Inc. (hereinafter, "CRC Industries")—know that people inhale their dust removers to get high.

4.    Dust remover abuse comes at a terrible price for many innocent bystanders.  Because dust remover is so cheap, highly accessible, and produces such a quick high, people abuse them nearly anywhere, including while driving.  When someone gets high on dust remover while driving, they can quickly lose consciousness or control of their bodily movements and crash their vehicle, often resulting in catastrophic and deadly results.

5.    There have been numerous public reports of deaths and injuries to innocent bystanders caused by people driving while high on dust removers stretching back for at least twenty years.  The manufacturers, distributors, and sellers of these dust removers are fully aware of these predictable and foreseeable injuries and deaths.  Every one of these injuries and deaths was preventable, yet the manufacturers, distributors, and sellers of these dust removers—like CRC Industries—have failed to deter or prevent people from inhaling their dust removers.

6.    One person in particular whose injuries and death were foreseeable and preventable was Cynthia McDougall (hereinafter "Cynthia McDougall" or "Mrs.

McDougall"). On July 22, 2019, Cynthia McDougall was driving southbound on State Highway 172 in the City of Baudette, Lake of the Woods County, State of Minnesota. At the same time, a man named Kyle Neumiller was driving his motor vehicle while high on CRC Industries' dust remover, CRC Duster, northbound on the same highway. Predictably and foreseeably, Kyle Neumiller lost control of his vehicle, crossed over the center line, drove into oncoming traffic, and struck Mrs. McDougall's vehicle. The collision resulted in Cynthia McDougall's death. Cynthia McDougall's tragic death would have been avoided altogether if CRC Industries had not defectively designed, defectively manufactured, distributed, and sold CRC Duster, knowing it was reasonably foreseeable that someone would inhale CRC Duster to get high while driving and strike and harm and kill innocent bystanders like Cynthia McDougall.

## PARTIES, JURISDICTION, AND VENUE

### The McDougall Family

7.     Cynthia McDougall died on July 22, 2019 after Kyle Neumiller struck her vehicle while they were driving on State Highway 172 in Baudette, Lake of the Woods County, Minnesota. At the time of Mrs. McDougall's death, she was 42 years old, having been born on October 30, 1976. Cynthia McDougall was living in the City of Baudette, Lake of the Woods County, State of Minnesota, and left behind her husband, David McDougall, and their young child.

8.     David McDougall is Cynthia McDougall's surviving husband who resides in the City of Baudette, Lake of the Woods County, State of Minnesota.

9.     David McDougall is the court-appointed Trustee for the Next-of-Kin of Cynthia McDougall, having been duly appointed as the Trustee to pursue this claim by the Ninth Judicial District Court of Lake of the Woods County, of the State of Minnesota, on May 14, 2020. The Order appointing David McDougall as Trustee for the Next-of-Kin of Cynthia McDougall is attached hereto as Exhibit 1.

10.     David McDougall is suing in his individual capacity and in his capacity as the court-appointed wrongful death Trustee for the Next-of-Kin of Cynthia McDougall.

11.     This wrongful death action complies with the Minnesota Wrongful Death Statute, Minn. Stat. § 573.02, et seq.

12.      To the extent that any claims asserted in this Complaint are authorized or required to be brought by individuals in their own names, David McDougall brings this action in his individual capacity against Defendants.

## The Defendants

13.     CRC Industries, Inc. ("CRC Industries") is a Pennsylvania registered Corporation with its principal place of business located in Pennsylvania.  Though CRC Industries' offices are located in Pennsylvania, upon information and belief, CRC Industries does distribute its CRC Duster into the stream of commerce throughout the United States, including within the State of Minnesota. Upon information and belief, CRC Industries is a wholly-owned subsidiary of Berwin Industries, LLC.

14.     John Doe Company Defendants #1–10, whose specific identities are currently unknown to Plaintiff, are the individuals, business entities, and corporations within the chain of commerce that sold, distributed, designed and/or manufactured CRC Duster for marketing, sale, and distribution into the stream of commerce, including within the State of Minnesota, to Kyle Neumiller and other consumers and users.  The pseudonymous designations are being used to preserve claims against these parties who will be named more fully if and when their identities are discovered.

15.     At all material and relevant times, CRC Industries oversees and/or engages in the designing, testing, manufacturing, producing, processing, assembling, formulating, inspecting, researching, promoting, labeling, marketing, advertising, distributing, and selling of CRC Duster, either directly or through third parties or related entities, to consumers throughout the United States, including within the State of Minnesota.

## Jurisdiction & Venue

16.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between Plaintiff and Defendants, and the amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000), exclusive of interest, costs and disbursements.

17.     This Court has personal jurisdiction over CRC Industries because at all material and relevant times, CRC Industries' CRC Duster product caused injuries in the State of Minnesota, resulting in the death of Minnesota resident Cynthia

McDougall.  CRC Industries' CRC Duster product was involved in a motor vehicle crash in the State of Minnesota, and was defective and without proper, reasonable, and necessary warnings, labels, or instructions. CRC Industries has transacted business in the State of Minnesota, has continuous and systematic contacts with the State of Minnesota, has purposely targeted its commercial activities at residents in the State of Minnesota, including the sale of the CRC Duster product at issue, and has consented to jurisdiction in the State of Minnesota. Upon information and belief, CRC Industries has sold and/or distributed CRC Duster products to the State of Minnesota, advertised in the State of Minnesota, made material omissions and representations in the State of Minnesota, and breached warranties in the State of Minnesota.

[Remainder of Page Intentionally Blank]

18.    In addition, and upon information and belief, CRC Industries has employees in the State of Minnesota, including a Senior Regional Sales Manager who is a resident of the State of Minnesota and whose sales region specifically and purposefully targets the State of Minnesota:[1]



---

[1] CRC Industries, Inc., *CRC Industries Field Sales Coverage, Industrial/Electrical Division* https://www.stoplightfoodsafety.com/wp-content/uploads/2016/09/Regional-Mgr-Map-Indust-Elec-July-26-2016.pdf (last visited Jun. 30, 2020).

19.     CRC Industries has purposefully availed itself of the privilege of conducting business activities within the State of Minnesota, thus invoking the benefits and protections of its laws.

20.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and 18 U.S.C. § 1965 because a substantial part of the events and/or omissions giving rise to this action occurred in the State of Minnesota—Lake of the Woods County—and because CRC Industries is subject to this Court's exercise of personal jurisdiction.

## FACTS

## INHALANT ABUSE

21.     Inhalant abuse has been a public health issue in the United States for many years and continues to this day.[2]

22.     Inhalant abuse is the deliberate inhaling or sniffing of common products found in homes and schools to get high.[3]

23.     Inhalants include a variety of products, such as nitrous oxide, cleaning fluids, aerosols, gasoline, and spray paint.[4]

---

[2] National Institute on Drug Abuse, *Review of Inhalants: Euphoria to Dysfunction* (Oct. 1977), http://citeseerx.ist.psu.edu/viewdoc/download?doi=10.1.1.152.2815&rep=rep1&type=pdf#page=23.

[3] United States Consumer Product Safety Commission, *A Parent's Guide to Preventing Inhalant Abuse: "Inhalant Abuse: It's Deadly. Inhalant Abuse Can Kill,"* https://www.cpsc.gov/safety-education/safety-guides/containers-and-packaging/parents-guide-preventing-inhalant-abuse (last visited Apr. 27, 2020).

[4] Substance Abuse and Mental Health Services Administration, *Key Substance Use and Mental Health Indicators in the United States: Results from the 2018 National Survey on Drug Use and Health.*

24.     Inhalants are known to be abused for their intoxicating effects because they are often cheap, easily accessible, and easy to conceal.[5]

25.     Numerous organizations and governmental entities dedicate resources to raising awareness of inhalant abuse, such as the National Institute on Drug Abuse, Substance Abuse and Mental Health Services Administration, and American Addiction Centers.

26.     The National Institute on Drug Abuse has stated that the number of inhalant-related deaths in the United States was approximately 100-200 people per year as of July, 2012.[6]

27.     In 2018, the National Survey on Drug Use and Health reported that approximately two million people over 12 years old have used inhalants in the past.[7]

---

https://www.samhsa.gov/data/sites/default/files/cbhsq-reports/NSDUHNationalFindingsReport2018/NSDUHNationalFindingsReport2018.pdf (last visited Apr. 27, 2020).

[5] Carrie E. Anderson, M.D. & Glenn A. Loomis, M.D., *Recognition and Prevention of Inhalant Abuse,* American Family Physician,   (Sep. 1, 2003), https://www.aafp.org/afp/2003/0901/p869.html.

[6] National Institute on Drug Abuse, *Inhalants: What are the Medical Consequences of Inhalant Abuse?,* https://www.drugabuse.gov/publications/research-reports/inhalants/what-are-other-medical-consequences-inhalant-abuse (last updated July 2012).

[7] Substance Abuse and Mental Health Services Administration, *Key Substance Use and Mental Health Indicators in the United States: Results from the 2018 National Survey on Drug Use and Health.* https://www.samhsa.gov/data/sites/default/files/cbhsq-reports/NSDUHNationalFindingsReport2018/NSDUHNationalFindingsReport2018.pdf (last visited Apr. 27, 2020).

28.     American Addiction Centers refers to inhalant abuse as "the forgotten drug epidemic."[8]

29.     According to Sara Stickler, Executive Director of the Alliance for Consumer Education, inhalant-related deaths are vastly underreported: "You're looking in the hundreds probably, annually, just from the alerts and the cases we are able to track on our own.  But there's probably many, many more that are being recorded as something else."[9]

### COMPRESSED GAS DUSTING SPRAYS

30.     One particular category of inhalants that are known to be abused for their intoxicating effects is compressed gas dusting sprays.[10]

31.     Compressed gas dusting sprays are often referred to in many different ways, including "keyboard cleaner," "electronics cleaner," "computer cleaner," "dusting spray," "canned air," "compressed gas cleaner," "compressed gas duster," as examples.  For purposes of this Complaint, this category of products will be referred to as "dust remover" or "dust removers."

---

[8] American Addiction Centers, *The Dangers of Inhalants,* https://americanaddictioncenters.org/inhalant-abuse (last updated June 10, 2019).
[9] Carter Sherman, *Inhalants — The Easy to Acquire but Deadly Drug That Nobody Talks About*, Houston Press (September 6, 2016), https://www.houstonpress.com/news/inhalants-the-easy-to-acquire-but-deadly-drug-that-nobody-talks-about-8730670.
[10] Substance Abuse and Mental Health Services Administration, *Key Substance Use and Mental Health Indicators in the United States: Results from the 2018 National Survey on Drug Use and Health*, https://www.samhsa.gov/data/sites/default/files/cbhsq-reports/NSDUHNationalFindingsReport2018/NSDUHNationalFindingsReport2018.pdf (last visited Apr. 27, 2020).

32.     Dust removers typically share similar characteristics, both physically and chemically.

33.     Dust removers are physically similar in that they are sold in a handheld can that is topped by a spray nozzle and an actuator trigger that opens a valve to release a pressurized stream of pressurized gas through and out the spray nozzle.

34.     Dust removers are nearly identical in appearance and function, which is to spray a highly pressurized gas out of the can to clear a surface of dust and debris.

35.     CRC Industries, for example, at all material and relevant times and upon information and belief, designed, manufactured, tested, labeled, distributed, and, sold a dust remover called "Duster" (referred to herein as "CRC Duster").



[Remainder of Page Intentionally Blank]

11

36.     The primary function of CRC Duster, according to its manufacturer, is to "provide[] a powerful blast of product to remove embedded debris without damaging sensitive components or surface finishes."[11]

37.     At all material and relevant times, the function of CRC Duster was similar to other dust removers on the market, which was to remove dust and lint.

38.     The primary function of a similar product, Ultra Duster-branded dust remover, according to its manufacturer, is to "blast dust, dirt, and unwanted micro-articles away from computers, keyboards, printers plus many more."[12]



---

[11] CRC Industries, Inc., *CRC Duster Product Description,* https://www.crcindustries.com/products/duster-8482-moisture-free-dust-lint-remover-8-wt-oz-05185.html.
[12] AW Distributing, Inc., *Ultra Duster Product Description,* http://www.awdus.com/products_01_01.html.

39.     The primary function of a similar product, 3M Dust Remover, according to its manufacturer, is to "to "Remove[] Dust & Lint in Home or Office."[13]   3M Dust Remover is marketed as a "Compressed Gas Duster."



[Remainder of Page Intentionally Blank]

[13] 3M Company, *3M Dust Remover Label*, http://www.3m.com/us/office/advisory/Artwork3MDustRemoverApprovedOctober2008.pdf.

40.   The primary function of another similar product, Dust-Off branded dust remover, according to its manufacturer, is to "provide potent dust-removing power for practically any task.  Use in your office space to clean keyboards, CPU, laptop, or desk area.  Great for removing dust around the home like window blinds, collectibles, sewing machines, holiday ornaments, craft projects and silk flower arrangements."[14]



[Remainder of Page Intentionally Blank]

---

[14] Falcon Safety Products, Inc., *Dust-Off Product Description*, https://falconsafety.com/shop/dusters/disposable/disposable-duster-10-oz/.

41.     Dust removers are chemically similar in that they typically contain a pressurized volatile, fluorinated hydrocarbon gas called 1-1, difluoroethane (hereinafter "difluoroethane" or "DFE").[15]

42.     DFE is used in many consumer products—such as deodorants, hair spray, mousse, air fresheners, disinfectants, household cleaners, and automotive cleaners and waxes—as an aerosol propellant or foaming agent to propel the main product out of its container or create the foaming properties of certain products.[16]

43.     Because DFE is a central nervous system depressant, when inhaled, it causes debilitating and impairing effects such as unconsciousness, drowsiness, dizziness, and suffocation.[17]

---

[15] Falcon Safety Products, Inc., *Dust-Off Compressed Gas Duster Safety Data Sheet*, https://falconsafety.com/wp-content/uploads/SDS_dust-off-compressed-gas-duster.pdf.

[16] National Center for Biotechnology Information, PubChem Database, 1,1-Difluoroethane, CID=6368, https://pubchem.ncbi.nlm.nih.gov/compound/1%2C1-difluoroethane#section=Use-and-Manufacturing (last visited Apr. 27, 2020).

[17] International Programme on Chemical Safety, Internationally Peer Reviewed Chemical Safety Information, 1,1-Difluoroethane, ISCS: 1729 (March 2009), http://www.inchem.org/documents/icsc/icsc/eics1729.htm; Novotny, Clara B et al., "Acute Psychosis Following 1,1-Difluoroethane Inhalation," *Cureus* vol. 11,9 e5565, Sep. 4, 2019, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6820689/; Alexis L. Cates and Matthew D. Cook, "Severe Cardiomyopathy after Huffing Dust-Off," *Case Reports in Emergency Medicine*, vol. 2016, Article ID 9204790 (2016), https://www.hindawi.com/journals/criem/2016/9204790/#B2.

44.     Inhaling products that contain DFE can also cause paralysis, which partially or completely interferes with a person's ability to move normally or control their bodily movements.[18]

45.     The impairing effects of inhaling products containing DFE commonly result in dizziness, loss of inhibitions, inability to make sound decisions, and slurred speech.[19]

46.     When inhaled, DFE can also cause death by cardiac arrest.[20]

47.     As early as 1936, scientists began testing fluorinated hydrocarbons as a potential surgical anesthesia because of their analgesic effects.[21]

48.     Researchers continued their research into the anesthetic properties of fluorinated hydrocarbons in 1960, specifically testing DFE on dogs and human volunteers.[22]

---

[18] American Addiction Centers, *Huffing Canned Air or Dust-Off: Side Effects, Signs, and More,* https://americanaddictioncenters.org/inhalant-abuse/side-effects (last updated Jun. 17, 2019).
[19] *Id.*
[20] Avella, Joseph et al., "Fatal Cardiac Arrhythmia After Repeated Exposure to 1,1-Difluoroethane (DFE)," *The American Journal of Forensic Medicine and Pathology*. 27(1):58-60 (March 2006), https://www.ncbi.nlm.nih.gov/pubmed/16501351 [abstract].
[21] Harold Booth & May E. Bixby, "Fluorine Derivatives of Chloroform," *Industrial and Engineering Chemistry*, 24(6):637-41 (June 1932), https://pubs.acs.org/doi/pdf/10.1021/ie50270a012 [first page].
[22] Alan Poznak and Joseph F. Artusio, Jr., "Anesthetic Properties of a Series of Fluorinated Compounds: I. Fluorinated Hydrocarbons," *Toxicology and Applied Pharmacology*, vol. 2(4):363-73 (July 1960), https://www.sciencedirect.com/science/article/pii/0041008X60900028 [abstract].

49.     The volunteer human testers inhaled the DFE and "noted good analgesia and impending loss of consciousness."[23]

50.     While the DFE exhibited good anesthetic properties, researchers eliminated DFE as a possible surgical anesthetic because of its explosive properties.[24]

51.     According to the American Addiction Centers, inhaling DFE also causes immediate psychoactive, intoxicating-like side effects, such as a rush of euphoria, hallucinations, and delusions.[25]

52.     Because of these effects, DFE is, and has been at all material and relevant times, a popular substance of abuse.[26]

53.     In fact, reports started surfacing in the 1960s of teenagers dying after inhaling volatile hydrocarbons similar to DFE.[27]

54.     DFE use can lead to addiction, which is a form of Substance Abuse Disorder.[28]

---

[23] *Id.*

[24] *Id.*

[25] American Addiction Centers, *Huffing Canned Air or Dust-Off: Side Effects, Signs, and More.*
https://americanaddictioncenters.org/inhalant-abuse/side-effects (last updated Jun. 17, 2019).

[26] Regina Liu & Thomas Blair, MD, *Skeletal Fluorosis and "Sniffer's Dermatitis" After Inhalant Abuse with 1,1-Difluroethane*, *Proceedings of UCLA Health*, vol. 23 (2019), https://www.proceedings.med.ucla.edu/wp-content/uploads/2019/03/Liu-A190213RL-BLM-edited.pdf.

[27] *Id.*

[28] National Institute on Drug Abuse, *Inhalants: What are Inhalants?*, https://www.drugabuse.gov/publications/drugfacts/inhalants (last updated April 2020).

55.     Reports of people getting hurt, dying, and killing and injuring others after inhaling products containing DFE, such as dust removers, continue to this day.

## DUST REMOVER ABUSE

56.     Predictably and foreseeably, when a person intentionally inhales a propellant—such as a dust remover containing DFE—that person frequently exhibits some or all of the aforementioned adverse health effects along with the sought-after intoxicating, psychoactive side effects.

57.     Reports of dust remover abuse in the public domain are numerous and easily accessible, for example by a simple online search of widely available public media, like newspapers.

58.     Reports of people getting high on dust remover, driving, and causing harm and death to others are also numerous, easily accessible, and in the public domain.

59.     Governmental agencies, organizations, researchers, and media from around the country have compiled data and reported on people intentionally inhaling propellants, including dust removers since at least the 1990s.

60.     It is clear, and has been clear at all material and relevant times, that people have been abusing dust removers to get high and continue to do so to this day.

61.     It is clear, and has been clear at all material and relevant times, that people will drive while high on dust removers.

62.    It is clear, and has been clear at all material and relevant times, that people will cause injuries and death to innocent bystanders while driving high on dust removers.

63.    Researchers have reported that while inhalant abuse—such as sniffing gasoline or paint—in general has been in decline over time since 1993, propellant abuse—such as intentionally inhaling dust remover—specifically increased starting around 1998 and started to skyrocket around 2003:[29]



64.    This same study calculated that dust remover comprised about 57% of all propellant abuse during this same time frame.[30]

---

[29] Melinda R. Marsolek, et al., *Inhalant Abuse: Monitoring Trends by Using Poison Control Data, 1993-2008*, Pediatrics, 125(5) 906-913 (May 2010), https://pediatrics.aappublications.org/content/125/5/906#T1.
[30] *Id.*

65.    In 1997, a woman struck and catastrophically injured another driver when the woman lost control of her vehicle after getting high on dust remover while driving.[31]

66.    In 1997, researchers published a case report of two individuals who died when their vehicle crashed after the driver got high from inhaling a can of propellant containing DFE.[32]

67.    In 1999, five high school juniors in Pennsylvania were killed when the driver ran her vehicle off the side of the road and struck a tree after getting high on dust remover; three of the passengers were also reported to have DFE in their system.[33]

68.    Almost exactly two years later in 2001, a Pennsylvania teenager died when she veered off the road and crashed her vehicle after she got high from dust remover.[34]

---

[31] Craig Peters, *Woman Submits Plea in Huffing Crash*, GoUpstate.com (Sep. 12, 2008), https://www.goupstate.com/news/20080912/woman-submits-plea-in-huffing-crash.

[32] LA Broussard, et al., *Two Traffic Fatalities Related to the Use of Difluoroethane*, J. Forensic Sci.,42(6):1186–7 (Nov. 1997), https://www.ncbi.nlm.nih.gov/pubmed/9397568 [abstract].

[33] Michael Janofsky, *Fatal Crash Reveals Inhalants as Danger to Youth,* N.Y. Times (Mar. 2, 1999), https://www.nytimes.com/1999/03/02/us/fatal-crash-reveals-inhalants-as-danger-to-youth.html.

[34] Katrina Macleod, *Coroner Says Inhalant Use Led to Fatality,* Daily Local News (Feb. 24, 2001), https://www.dailylocal.com/news/coroner-says-inhalant-use-led-to-fatality/article_76cc60a8-1de0-5aa7-94c5-43dd18fb828d.html.

69.    In June of 2001, a teenager in Indianapolis died after getting high on dust remover in a swimming pool, where he drowned when his heart stopped.[35]

70.    The United States Consumer Product Safety Commission operates an injury surveillance system known as the National Electronic Injury Surveillance System ("NEISS"). The purpose of the NEISS is to collect and publish data on consumer product-related injuries occurring in the United States, including aerosol inhalant-related injuries, by cataloging some emergency room visits from 1997-2010.[36]

71.    The NEISS's first record of a computer duster-specific injury is 2002:

**Date:** 01/22/2002          **Age:** 14 years          **Sex:** Male          **Race:** White
**Location:** Not recorded          **Fire:** No fire involvement or fire involvement not recorded
**Body part:** All Of Body          **Diagnosis:** Poisoning
**Product:** Aerosol containers
14 YOM INHALED AEROSOL "PERFECT DUSTER ' STATES " I NEEDED TO GET HIGH; PCC CONTACTED
**Disposition:** Treated and transferred to another hospital

72.    There are dozens of reports of dust remover abuse clearly identified in the NEISS from 2002–2010.[37]

---

[35] *Car Crash at Regatta Draws Attention to Inhalant Use*, Madison Courier (July 25, 2006), https://madisoncourier.com/Content/News/News/Article/Car-crash-at-Regatta-draws-attention-to-inhalant-use/178/961/31258.
[36] National Electronic Injury Surveillance System, *Accidents-Aerosol Containers-Years 1997-2010-All of Body*,
http://www.hospital-data.com/accidents/1133-aerosol-containers/all-of-body/index.html (last visited Apr. 27, 2020).
[37] *Id.*

73.     In 2004, researchers published a research article reviewing the death of a person associated with inhaling dust removers.[38]

74.     In 2005, Today.com alerted its readers to the increasing danger of "dusting," or inhaling dust remover after several children were killed after getting high on dust remover in separate incidents.[39]

75.     In 2006, a woman died after getting high on 3M Dust Remover that she purchased from Walmart.[40]

76.     In 2006, researchers published a research article reviewing the death of a person associated with getting high on dust removers and other products containing DFE.[41]  According to the article, the trunk of the car contained approximately forty cans of dust remover, including CRC Industries' CRC Duster-branded dust remover.

77.     In 2006, researchers published a case report of an individual who had crashed her vehicle and died after getting high on dust remover.[42]

---

[38] Z. Xiong et al., *Sudden Death Caused by 1,1-difluorethane Inhalation*, J. Forensic Sci., 49(3):627-9 (May 2004), https://www.ncbi.nlm.nih.gov/pubmed/15171188 [abstract].

[39] Peter Alexander, *"Dusting" is the New Killer High for Teens*, Today (Jul. 26, 2005), https://www.today.com/parents/dusting-new-killer-high-teens-2D80555302.

[40] *Wal-Mart, 3M Sued in Teenager's Death from Solvent*, Reuters (May 31, 2007), https://www.reuters.com/article/us-walmart-huffinglawsuit/wal-mart-3m-sued-in-teenagers-death-from-solvent-idUSN3122706820070531.

[41] Avella, Joseph et al., *Fatal Cardiac Arrhythmia After Repeated Exposure to 1,1-Difluoroethane (DFE)*, The American Journal of Forensic Medicine and Pathology, 27(1):58-60 (March 2006), https://www.ncbi.nlm.nih.gov/pubmed/16501351 [abstract].

[42] T. Hahn et al., *A Motor Vehicle Accident Fatality Involving the Inhalation of 1,1-Difluoroethane*, J. Analytical Toxicology, vol. 30(8):638-42 (Oct. 2006), https://www.ncbi.nlm.nih.gov/pubmed/17132266 [abstract].

78.    In 2006, a California TV news channel aired a special report on the dangers of huffing dust removers, focusing on the deaths of three teenagers who were believed to have been high on dust remover when their car crashed.[43]

79.    In 2007, a man was killed as he was walking in a parking lot when he was struck by a vehicle driven by a woman who was high on 3M Dust Remover-branded dust remover.[44]

80.    In 2007, a Nebraska man crashed his vehicle into a tree after getting high on 3M Dust Remover-branded dust remover.[45]

81.    In 2012, researchers published a case report identifying 17 deaths involving DFE at the San Diego County Medical Examiner's Office from 2007-2011.[46] Among those 17 reports of death involving DFE, "Case 3" identified the death of a 50-year-old male in a car crash. Witnesses who saw the crash described the man as traveling approximately 65 mph when he "veered to the right across lanes, onto the shoulder, and down a steep embankment, overturning the vehicle many times."  An intact can containing DFE was found among the crash debris.

---

[43] KCRA3, *Huffing and Teens*, YouTube (Jun. 17, 2011), https://www.youtube.com/watch?v=b03ZSk8g40U.

[44] *Downing v. City of Dothan*, 59 So. 3d 16 (Ala. 2010), https://caselaw.findlaw.com/al-supreme-court/1539446.html.

[45] Sarah Schulz, *Teen Who Ran Over Police Officer Involved in Second Accident*, The Grand Island Independent*,* (Jan. 18, 2007), https://www.theindependent.com/news/teen-who-ran-over-police-officer-involved-in-second-accident/article_e545b1c0-af76-5a21-8062-935e80b0c920.html.

[46] Vance, Chris, et al., *Deaths Involving 1,1-Difluoroethane at the San Diego County Medical Examiner's Office*, Journal of Analytical Toxicology, Vol. 36(9):626-33 (Nov./Dec. 2012), https://academic.oup.com/jat/article/36/9/626/784617.

82.     In 2008, an Oklahoma man was arrested on charges of public intoxication after getting high on 3M Dust Remover-branded dust remover; the police found more than 200 cans of dust remover in the man's vehicle.[47]

83.     In 2008, researchers published a case report of an individual who had crashed his vehicle after getting high on dust remover.[48]

84.     In 2009, a Nebraska man was found unresponsive in his vehicle after getting high on 3M Dust Remover-branded dust remover.[49]

85.     In 2009, an Ohio teenager died when she crashed her car after getting high on dust remover that she purchased at Walmart.[50]

86.     In 2009, a Pennsylvania woman veered off the road after she got high on dust remover and struck and killed a teenager and seriously injured another teenager who were walking on a sidewalk.[51]

---

[47] *12-11 Crime Briefs*, The Edmond Sun (Dec. 10, 2008), https://www.edmondsun.com/news/local_news/crime-briefs/article_a7286710-e3da-51d4-b733-111878ece7e5.html (last visited Jan. 7, 2020).

[48] Little, Jill et al., *Inhalant Abuse of 1,1-Difluoroethane (DFE) Leading to Heterotopic Ossification: A Case Report*, Patient Safety in Surgery, vol. 2(1):28, (Oct. 2008), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2584001/.

[49] *Talmage Man Arrested for Huffing in Hospital Garage*, Lincoln Journal Star (Aug. 11, 2009), https://journalstar.com/news/local/crime-and-courts/talmage-man-arrested-for-huffing-in-hospital-garage/article_172e2f0c-86af-11de-8056-001cc4c03286.html.

[50] *Teen Admits Huffing Before Fatal Crash*, 21WFMJ (Aug. 24, 2009), https://www.wfmj.com/story/10951585/teen-admits-huffing-before-fatal-crash.

[51] William Bender, *Cops: "Huffing" Cause of Fatal Delco Crash*, The Philadelphia Inquirer (Sep. 10, 2009), https://www.inquirer.com/philly/hp/news_update/20090910_Cops__Huffing_cause_of_fatal_Delco_crash.html.

87.     In 2009, a case study analyzed the death of a man who died after getting high on dust remover.[52]

88.     In 2009, a man in Wyoming was found guilty of aggravated vehicular homicide stemming from charges that he killed someone when he passed out while driving and high on dust remover.[53]

89.     In 2010, a man in Pennsylvania got high on dust remover he purchased at a local Walmart, veered into oncoming traffic, and struck and killed a music teacher.[54]

90.     In 2010, an Illinois teenager killed the passenger in his vehicle when he crashed after getting high on dust remover.[55]

91.     In 2010, the American Journal of Drug and Alcohol Abuse warned that dust remover abuse by adolescents was becoming a public health threat.[56]

---

[52] C. Sasaki, T. Shinozuka, *A Fatality Due to Inhalation of 1,1-Difluoroethane (HFC-152a) With a Peculiar Device*, Forensic Toxicology 27:45 (2009), https://link.springer.com/article/10.1007/s11419-008-0065-7.

[53] William Browning, *Casper Man Faces Felony DUI*, Billings Gazette (Apr. 18, 2011), https://billingsgazette.com/news/state-and-regional/wyoming/casper-man-faces-felony-dui/article_44842e90-1c24-5c11-bc49-4030c05dfd34.html.

[54] Jason Nark, *Cops: Man Did Drugs Before Crash that Killed Teacher*, The Philadelphia Inquirer (Oct. 12, 2010), https://www.inquirer.com/philly/hp/news_update/20101013_Cops__Man_did_drugs_before_crash_that_killed_teacher.html.

[55] Dave Haney, *Teen Gets Prison for Fatal Crash*, Peoria Journal Star (Aug. 20, 2011), https://www.pjstar.com/article/20110820/NEWS/308209911.

[56] Eric Garland, & Matthew Howard, *Inhalation of Computer Duster Spray Among Adolescents: An Emerging Public Health Threat?*, The American Journal of Drug and Alcohol Abuse, vol.36(6):320-24 (Jul. 21, 2010), https://www.tandfonline.com/doi/full/10.3109/00952990.2010.504874 [abstract].

92.     In 2010, a TV news station aired a report on several teenagers who crashed a car after getting high on dust removers, including 3M Dust Remover-branded dust remover.[57]

93.     A video uploaded to YouTube.com on November 27, 2010 shows at least one person inhaling dust remover while sitting in a parked car.[58]

94.     In 2011, a man in Wyoming was reported to have crashed his vehicle after getting high on dust remover.[59]

95.     Two days later, yet another man in Wyoming was reported to have crashed his vehicle after getting high on dust remover he purchased at a local Walmart beforehand.[60]

96.     A video posted to YouTube.com in 2011 shows a young man getting high on dust remover while sitting in the driver's seat of a vehicle.[61]

97.     Another video posted to YouTube.com in 2011 shows a young man getting high on dust remover while sitting in the driver's seat of a vehicle.  The young

---

[57] 40/29 News, *Police Say Teens High on Duster*, YouTube (Sep. 3, 2010), https://www.youtube.com/watch?v=K1hNUrWuYKo.

[58] @shurrden, *Bella Inhaling Dust Remover*, YouTube (Nov. 27, 2010), https://www.youtube.com/watch?v=7kRttfMkSro.

[59] William Browning, *Casper Man Faces Felony DUI*, Billings Gazette (Apr. 18, 2011), https://billingsgazette.com/news/state-and-regional/wyoming/casper-man-faces-felony-dui/article_44842e90-1c24-5c11-bc49-4030c05dfd34.html.

[60] *19-Year Old Faces DUI Charge After Allegedly Huffing*, Casper Star Tribune (Apr. 20, 2011), https://trib.com/news/local/casper/year-old-faces-dui-charge-after-allegedly-huffing/article_33bd9038-2683-5537-9ba4-9ac8d3e5ca19.html.

[61] @swifferkillsdogs, *Jimmy Huffing Dust Remover*, YouTube (Dec. 14, 2011), https://www.youtube.com/watch?v=FjlazUNE2-8.

man shares the can of dust remover with his passengers, who also inhale from the can.[62]

98.    In 2011, an Illinois man crashed his vehicle after getting high on dust remover, killing three of his passengers.[63]

99.    In 2011, a California woman crashed her vehicle after getting high on 3M Dust Remover-branded dust remover.[64]

100.    In 2011, researchers published a research article reviewing three deaths associated with inhaling dust removers.[65]

101.    In two videos posted to YouTube.com in 2011, several young men are shown getting high on dust remover in the woods; the resulting debilitating and mind-altering effects visibly present.[66]

102.    In 2012, researchers published a research article reviewing the death of a person associated with inhaling dust removers.[67]

---

[62] @allenpalin, *Doing Duster at Whataburger*, YouTube (Dec. 26, 2011), https://www.youtube.com/watch?v=GYRQN-7raLM&has_verified=1.

[63] *People v. Blakey*, 44 N.E.3d 1186 (Ill. App. Ct. 2015). https://caselaw.findlaw.com/il-court-of-appeals/1719505.html.

[64] Melissa Pinion-Whitt, *Madd to Honor Rialto Police Officer*, Los Angeles Daily News (Mar. 11, 2011, updated Aug. 28, 2017), https://www.dailynews.com/2011/03/11/madd-to-honor-rialto-police-officer/.

[65] C. Sasaki, T. Shinozuka, *A Fatality Due to Inhalation of 1,1-Difluoroethane (HFC-152a) With a Peculiar Device*, Forensic Toxicology, 27:45 (2009), https://www.ncbi.nlm.nih.gov/pubmed/20875935 [abstract].

[66] @theicedub, *Duster Trip Part 1*, YouTube (Apr. 29, 2011), https://www.youtube.com/watch?v=4yR9MJl3OQk; @theicedub, *Duster Trip Part 2*, YouTube (Apr. 29, 2011), https://www.youtube.com/watch?v=xdbH2PXS2kU.

[67] PC Kurniali et al., *Inhalant Abuse of Computer Cleaner Manifested as Angioedema*, American Journal of Emergency Medicine, 30(1): 265e3-5 (Jan. 2012), https://www.ncbi.nlm.nih.gov/pubmed/21295430 [abstract].

103.    In February of 2012, a woman struck and seriously injured two men who were standing in their own driveway after the woman lost control of her vehicle when she got high on dust remover.[68]

104.    A woman was convicted of third-degree murder in Pennsylvania after she huffed dust remover she purchased at a local Walmart before she struck and killed another driver in August of 2012.[69]

105.    In September 2012, a Vermont man struck and killed a teenager who was walking to her father's car after the man lost control of his vehicle when he got high on dust remover.[70]

106.    In October 2012, a man crossed the median and struck and killed two siblings after getting high on dust remover.[71]

---

[68] Julius Whigham II, *Woman, 19, Charged with DUI in Delray Beach Crash that Injured Two; Accused of "Huffing" Aerosol Can*, The Palm Beach Post (Oct. 23, 2012), https://www.palmbeachpost.com/article/20121023/NEWS/812023237.
[69] Steve Bauer, *Judge Rejects New Trial in Fatal Huffing Case*, StateCollege.com (June 10, 2015), http://www.statecollege.com/news/local-news/judge-rejects-new-trial-in-fatal-huffing-case,1464214/.
[70] Brent Curtis, *Man Guilty of Manslaughter in Crash While "Huffing,"* Times Argus Online (Jan. 17, 2015), https://www.timesargus.com/news/man-guilty-of-manslaughter-in-crash-while-huffing/article_f72d7085-c65c-5b5a-9420-dc234b33b782.html.
[71] *Man Sentenced for Crash that Killed Ole Miss Siblings*, WMC5 Action News (Sept. 23, 2013, updated June 30, 2013), https://www.wmcactionnews5.com/story/23505970/man-sentenced-for-crash-that-killed-ole-miss-siblings/.

107.   In 2012, a woman was charged with reckless homicide after local authorities said she struck and killed a five-year-old girl while driving high on dust remover.[72]

108.   In 2012, a TV station aired a story featuring a teenager who lost consciousness and caused a multi-vehicle crash after she got high on dust remover while driving.[73]

109.   In 2013, researchers published a case study of a man who suffered from acute renal failure after inhaling twenty cans of Ultra Duster-branded dust remover in twenty hours.[74]

110.   In 2014, a TV news station reported a twenty-one-year-old had died after huffing dust remover.[75]

111.   In 2014, law enforcement in Greenwich, New York were prompted to warn the public of the dangers associated with huffing after a man was hospitalized for inhaling dust removers.[76]

---

[72] *Suit: "Huffing" Teen Driver May Have Run Over Girl Twice*, CBS Chicago (Sep. 20, 2012), https://chicago.cbslocal.com/2012/09/20/suit-huffing-teen-driver-may-have-run-over-girl-5-twice/.
[73] Wood TV8, *Driver on "Duster" Causes 3-Car Crash*, YouTube (Dec. 13, 2012), https://www.youtube.com/watch?v=sDpnX0m7a8E.
[74] Danxuan Long et al. "A Case of Ultra Duster Intoxication Causing Acute Renal Failure," CHEST, Volume 144, Issue 4, 290A (Oct. 29, 2013), https://journal.chestnet.org/article/S0012-3692(16)42923-5/fulltext.
[75] ABC 17 News, *21-Year-Old Dies from Inhaling Air Duster Can*, YouTube (Nov. 11, 2014), https://www.youtube.com/watch?v=ePXED7E4-sw&feature=youtu.be.
[76] *Spread of "Huffing" Feared*, The Post Star (June 2, 2014), https://poststar.com/news/local/spread-of-huffing-feared/article_287eac5e-ea9c-11e3-a0bf-001a4bcf887a.html.

112.   In 2014, a woman suffered near-fatal injuries in Maine when local authorities alleged she crashed her car after getting high on dust remover.[77]

113.   In 2014, local authorities in Texas charged a man with a felony when he was alleged to have crashed his car after getting high on dust remover, injuring himself and his passenger.[78]

114.   In 2016, researchers published a research article reviewing the death of a person associated with inhaling dust removers.[79]

115.   In 2016, researchers published a research article reviewing the death of another person associated with inhaling dust removers.[80]

116.   In 2017, a driver struck and fatally killed three Minnesota men who were traveling to a cabin for the weekend after the driver huffed Ultra Duster-branded dust remover.[81]

---

[77] Erica Thoms, *Driver in Near-Fatal Belfast Crash Charged with Abuse of Inhalants* (May 14, 2014), https://www.penbaypilot.com/article/driver-near-fatal-belfast-crash-charged-abuse-inhalants/33406.

[78] *MPD: Man Inhales Air Duster, Injures Passenger in Crash*, MRT.com (June 2, 2014), https://www.mrt.com/crime/article/MPD-Man-inhales-air-duster-injures-passenger-in-7411373.php.

[79] S. Kumar et al., *Cardiomyopathy from 1,1-Difluoroethane Inhalation*, Cardiovascular Toxicology 16, 370-73 (Nov. 2015), https://link.springer.com/article/10.1007%2Fs12012-015-9348-5 [abstract].

[80] Alexis L. Cates and Matthew D. Cook, *Severe Cardiomyopathy after Huffing Dust-Off*, Case Reports in Emergency Medicine, vol. 2016, Article ID 9204790 (2016), https://www.hindawi.com/journals/criem/2016/9204790/.

[81] FOX 9, *Impaired, wrong-way driver in court for deaths of three cabin-bound Minnesota men*, (Aug. 9, 2017) https://www.fox9.com/news/impaired-wrong-way-driver-in-court-for-deaths-of-three-cabin-bound-minnesota-men.

117.   In 2017, a Minnesota mother and daughter suffered severe injuries when a driver crashed his vehicle after getting high on Ultra Duster-branded dust remover.[82]   A lawsuit against the manufacturer is pending in the United States District Court, District of Minnesota.[83]

118.   A video posted to YouTube.com in 2017 shows a woman sitting in the driver's side of her car immediately after crashing her car and then continuing to huff from a can of dust remover.[84]

119.   In a particularly disturbing video posted to YouTube.com in 2017, a young man inhales dust remover while sitting in the driver's seat of his truck and parked in a parking lot.  The video demonstrates the immediate, debilitating effects of inhaling dust remover.[85]

120.   In 2019, researchers published a case study of a woman who suffered from acute psychosis after inhaling a dust remover.[86]

---

[82] Justin Labounty, *Four Hurt, One With Life Threatening Injuries In Sherburne Crash*, WJON.com, (Dec. 7, 2017) https://wjon.com/four-hurt-one-with-life-threatening-injuries-in-sherburne-crash/.

[83] Complaint, *Chairez et al v. AW Distributing, Inc et al*, No. 0:20CV01473 (D. Minn. Jun. 26, 2020).

[84] @RoadCam, *Woman Inhaling Gas Duster Caused a Crash*, YouTube (Nov. 27, 2017), https://www.youtube.com/watch?v=YJrroAChIW4.

[85] @Diamondmytegaming, *Air Duster in a McDonald's Parking Lot*, YouTube (Oct. 2, 2017), https://www.youtube.com/watch?v=Wt-3JF1tgM0.

[86] Clara B. Novotny et al. "Acute Psychosis Following 1,1-Difluoroethane Inhalation," *Cureus* vol. 11(9) e5565 (Sep. 4 2019), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6820689/.

121.   In 2019, a researcher published an article about "[s]udden sniffing death" which can occur when an individual inhales dust remover—"an inexpensive easily accessible product[]."[87]

122.   On May 28, 2020, a Wisconsin man struck and killed an eighteen-year-old girl who was walking after the man lost control of his vehicle when he got high on dust remover.[88]

123.   On June 1, 2020, researchers published a case study of a man who suffered from significant cardiomyocyte damage after inhaling multiple cans of Dust-Off branded dust remover on a daily basis for one month.[89]

124.   And in popular culture, dust remover abuse has been portrayed on film and TV and entertainment personalities have fallen victim to the intoxicating and addicting effects of dust removers.

125.   In the movie *Thirteen*, released in 2003, two characters are portrayed getting high on dust remover.[90]

---

[87] Kathy Prybys, DO, "Sudden Sniffing Death," University of Maryland School of Medicine, Department of Emergency Medicine, https://umem.org/educational_pearls/3622/ (last updated Jul. 5, 2019).

[88] Fox WZAW, *Court docs: Texting was a factor in fatal Adams County hit-and-run,* (May 28, 2020) https://www.wsaw.com/fox/content/news/Court-docs-Texting-huffing-factors-in-fatal-Adams-County-hit-and-run-570840431.html.

[89] Cao A. Shiliang et. al, "Air Duster Inhalant Abuse Causing Non-ST Elevation Myocardial Infarction," Cureus 12(6): e8402 doi:10.7759/cureus.8402 (Jun. 1, 2020), https://www.cureus.com/articles/26124-air-duster-inhalant-abuse-causing-non-st-elevation-myocardial-infarction.

[90] Alexandru Cojanu, *Inhalant Abuse: The Wolf in Sheep's Clothing*, American Journal of Psychiatry Residents' Journal (Feb. 2018), https://psychiatryonline.org/doi/pdf/10.1176/appi.ajp-rj.2018.130203.

126.    On August 11, 2008, in Season 4, Episode 19 of the TV show *Intervention* which follows people who work to overcome—and recover from—their drug addictions, the show focused on a young woman who was addicted to getting high off dust removers.[91]

127.    In Season 14, Episode 7 of the TV show *South Park* that aired on April 28, 2010, the show portrayed one of the characters with a drug addiction and was depicted getting high on dust remover while sitting in a car.[92]

128.    In 2017, Aaron Carter, a popular singer, crashed his car after his friends called 911 multiple times to report Carter had been huffing dust remover all night, Carter had been driving all night, and that Carter was a danger on the road as a result.[93]

129.    On June 23, 2020, Brandon Hall, an actor prominently known for his role in the 1994 movie *Little Rascals,* was arrested for huffing dust remover after local authorities responded to a hotel's call about a possible overdose.[94]

---

[91] A&E, *Intervention: Allison*, S4 E19 (Aug. 11, 2008), https://www.aetv.com/shows/intervention/season-4/episode-19.

[92] @trilabyte700, *Towelie Inhaling 2000 Cans of Computer Air Duster a Day*, YouTube (Feb. 16, 2012), https://www.youtube.com/watch?v=wfXzHDY5Lrc.

[93] *Aaron Carter: "He's Inhaling Computer Duster" Says Friend in 911 Call (Audio)*, TheBlast (Sep. 21, 2017, updated June 10, 2019), https://theblast.com/c/aaron-carter-computer-duster-911-call.

[94] US Weekly, *'Little Rascals' Star Bug Hall Arrested for Allegedly Huffing Air Duster: See the Mugshot*, (Jun. 23, 2020) https://www.usmagazine.com/celebrity-news/news/little-rascals-bug-hall-arrested-for-allegedly-huffing-see-his-mugshot/.

## CRC INDUSTRIES' CRC DUSTER

130.   CRC Industries, at all material and relevant times and upon information and belief, designed, manufactured, tested, labeled, distributed, and/or sold a dust remover called "Duster" or "CRC Duster."



131.   At all material and relevant times, the function of CRC Duster was similar to other dust removers containing DFE on the market.

132.   At all material and relevant times, CRC Industries advertised and marketed CRC Duster as a "moisture-free dust & lint remover" that "[p]rovides a powerful blast of product to remove embedded debris without damaging sensitive components or surface finishes."[95]

---

[95] CRC Industries, *CRC Duster Product Description,*
 https://www.crcindustries.com/products/duster-8482-moisture-free-dust-lint-remover-8-wt-oz-05185.html.

133.   At all material and relevant times, the appearance of CRC Duster was substantially similar to other dust remover products on the market.

134.   At all material and relevant times, the main ingredient in CRC Duster—like other compressed gas dusters on the market—was DFE:[96]

### 8. Exposure controls/personal protection

**Occupational exposure limits**
**US. Workplace Environmental Exposure Level (WEEL) Guides**

| Components | Type | Value |
|---|---|---|
| 1,1-difluoroethane (CAS 75-37-6) | TWA | 2700 mg/m3 |
| | | 1000 ppm |

135.   At all material and relevant times, DFE was the main ingredient in CRC Duster because the sole purpose of this product is to propel a pressurized burst of gas from the can at a high velocity to displace dust and other material from the surface of whatever item is being cleaned.

136.   At all material and relevant times, CRC Industries published online a Safety Data Sheet that for CRC Duster which acknowledges the severe Central Nervous System effects of inhaling DFE:[97]

| INHALATION: | Inhalation of dispersed gas is not expected to cause negative effects. Inhalation of concentrated vapor may product anesthetic effects and feeling of euphoria. Prolonged exposure can cause rapid breathing, headache, dizziness, narcosis, and unconsciousness. Deliberately inhaling this product can lead to death from asphyxiation depending on concentration and duration of exposure. |
|---|---|

137.   Upon information and belief, CRC Industries revised the product label for CRC Duster and/or its Safety Data Sheet (available online) to remove reference to

---

[96] CRC Industries, *CRC Duster Safety Data Sheet,* http://docs.crcindustries.com/msds/1003746E.pdf.
[97] CRC Industries, *CRC Duster Material Safety Data Sheet,* https://media.lifeandhome.com/media/downloads/9060/MSDS.pdf.

the product's harmful intoxicating effects, and replaced it with a general notice to the user of the product that "[d]eliberately inhaling this product can lead to death from asphyxiation depending on concentration and duration of exposure."[98]

138.   Because the DFE in CRC Duster causes psychoactive effects when inhaled, many people intentionally inhale CRC Duster to get high.[99]

139.   At all material and relevant times, CRC Industries knew that people intentionally inhaled CRC Duster to get high.

140.   At all material and relevant times, CRC Industries knew that people intentionally inhaled CRC Duster to get high while driving and subsequently harm or kill innocent bystanders.

141.   CRC Industries also touts its support of "The Alliance for Consumer Education," claiming it supports the prevention of product misuse and abuse, and supports the Alliance's "abuse prevention program."[100]

142.   At all material and relevant times, CRC Industries provided inadequate warnings to the user of the product about the potential for harm that the user and innocent bystanders may experience as a result of inhaling CRC Duster.

143.   At all material and relevant times, CRC Industries provided no warnings that inhaling CRC Duster can cause harm or death to innocent bystanders,

---

[98] CRC Industries, *CRC Duster Safety Data Sheet,*
http://docs.crcindustries.com/msds/1003746E.pdf.
[99] National Institute on Drug Abuse, *Inhalants: Letter from the Director*,
https://www.drugabuse.gov/publications/research-reports/inhalants/letter-director.
[100] CRC Industries, *Sustainability*
https://www.crcindustries.com/sustainability/.

including the foreseeable and predictable risk that a person could lose control of their vehicle and strike and injure or kill another person when high on CRC Duster.[101]

144.  At all material and relevant times, and upon information and belief, CRC Industries never warned people who are, or who could be, exposed to CRC Duster that they should not operate a motor vehicle.[102]

145.  At one point in time, CRC Industries' Material Safety Data Sheet indicated that CRC Duster "contains a bittering agent to help prevent inhalant abuse,"[103] a copy of which is attached hereto as Exhibit 2.  However, CRC Industries' currently available Safety Data Sheet posted on the CRC Industries website and the Safety Data Sheet posted on retailers' websites, a copy of which is attached hereto as Exhibit 3, omit any information about the inclusion of an abuse deterrent bittering

---

[101] CRC Industries, *Website generally,* https://www.crcindustries.com/; CRC Industries, *CRC Duster Product Page,* https://www.crcindustries.com/products/duster-8482-moisture-free-dust-lint-remover-8-wt-oz-05185.html.
[102] CRC Industries, *Website generally,* https://www.crcindustries.com/; CRC Industries, *CRC Duster Product Page,* https://www.crcindustries.com/products/duster-8482-moisture-free-dust-lint-remover-8-wt-oz-05185.html.
[103] CRC Industries Material Safety Data Sheet for Product Number 05185 (Duster) (containing information about an abuse deterrent bittering agent) (attached hereto as Exhibit 2), also available at https://media.lifeandhome.com/media/downloads/9060/MSDS.pdf (website of retailer Life and Home including information about an abuse deterrent formula); *compare with* Safety Data Sheet for Product Number 05185 (Duster) (attached hereto as Exhibit 3), *also available at* https://images.homedepot-static.com/catalog/pdfImages/04/049099b4-6f7d-4eff-b69a-1224e992de21.pdf (retailer Home Depot omitting information about an abuse deterrent bittering agent).

agent ("bitterant" or "bittering agent").[104]  When CRC Industries advertised that CRC

Duster contained an abuse deterrent formula, the Material Safety Data Sheet read:[105]

INGESTION:                    Ingestion of liquid product may cause frostbite to mouth and throat.  Liquid product may
                              pose aspiration hazard.  This product contains a bittering agent.  Direct ingestion of
                              expelled gas or liquid will create an extreme bitter taste in the mouth.

**Additional Regulatory Information**:        This product contains a bittering agent to help to prevent inhalant abuse.

146.    At all material and relevant times and upon information and belief, any

bittering agent found in CRC Duster failed to effectively discourage or prevent people

from inhaling CRC Duster to get high.

147.    At all material and relevant times and upon information and belief, CRC

Industries had no intention of actually discouraging abuse of CRC Duster as an

inhalant as CRC Industries continued to sell CRC Duster in a form that continued to

be inhaled by persons seeking to get high.

148.    At all material and relevant times and upon information and belief, CRC

Industries may have only advertised the existence of a bittering agent because certain

retailers would not sell the product without such an advertisement.

149.    At all material and relevant times and upon information and belief,

certain retailers may have required CRC Industries to advertise the existence of a

bittering agent on its CRC Duster label in response to known incidents of dust

remover abuse.

---

[104] CRC Industries, *CRC Duster Safety Data Sheet for Product Number 05185 (Duster),* http://docs.crcindustries.com/msds/1003746E.pdf.
[105] CRC Industries, *CRC Duster Material Safety Data Sheet for Product Number 05185 (Duster)*, attached as Exhibit 3.

150.    However, at all material and relevant times, any bittering agent that CRC Industries advertised as an ingredient to discourage or prevent inhalant abuse in fact, did not work for its intended or advertised purpose.

151.    Or worse, reasonable further investigation and discovery may show that CRC Duster did not contain a bittering agent whatsoever.

152.    At all material and relevant times, people continued to abuse CRC Duster in order to get high, including Kyle Neumiller, despite the potential existence of a bittering agent.

153.    At all material and relevant times, CRC Industries knew or should have known that people continued to abuse CRC Duster to get high, despite the potential existence of a bittering agent in CRC Duster to purportedly help discourage, deter, or prevent inhalant abuse.

154.    At all material and relevant times, CRC Industries knew or should have known that any bittering agent present in CRC Duster did not effectively discourage abuse of CRC Duster as an inhalant.

155.    Reasonable further investigation and discovery may show that CRC Duster never contained a bittering agent whatsoever.

156.    Even if CRC Industries successfully incorporated a bittering agent into CRC Duster's formulation, the physiological effects of inhaling a bittering agent mixed with DFE could potentially cause bronchial smooth muscle relaxation, thereby

increasing DFE absorption in the body and increasing CRC Duster's intoxicating effects.[106]

157.   At all material and relevant times, CRC Duster was sold in quantities far greater than what would be expected if used only for its intended use.

158.   At all material and relevant times, CRC Industries knew or should have known that CRC Duster was being sold in quantities far greater than what would be expected if used only for its intended use.

159.   At all material and relevant times, CRC Industries knew or should have known that CRC Duster was being sold in quantities far greater than what would be expected if used only for its intended use because people were purchasing CRC Duster to get high.

160.   At all material and relevant times, CRC Industries knew or should have known that a large portion of its sales of CRC Duster were to people who purchased the product to get high.

---

[106] *See, e.g.,* Deshpande DA, Wang WCH, Mcilmoyle EL, Robinett KS, Schillinger RM, An SS, *et al. Bitter taste receptors on airway smooth muscle bronchodilate by localized calciumsignaling and reverse obstruction.* Nᴀᴛ Mᴇᴅ N Y (2010), 16:1299–304, *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3066567/; Clifford RL, Knox AJ. *Future bronchodilator therapy: a bitter pill to swallow?* Aᴍ J Pʜʏsɪᴏʟ-Lᴜɴɢ Cᴇʟʟ Mᴏʟ Pʜʏsɪᴏʟ (2012), 303:L953–5, *available at* https://journals.physiology.org/doi/full/10.1152/ajplung.00303.2012; Liggett SB. *Bitter taste receptors on airway smooth muscle as targets for novel bronchodilators.* Exᴘᴇʀᴛ Oᴘɪɴ Tʜᴇʀ Tᴀʀɢᴇᴛs (2013), 17:721–31 *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4437536/.

161.   At all material and relevant times, CRC Industries knew or should have known that persons were using CRC Duster in a manner that resulted in death and injury to innocent bystanders in motor vehicle crashes.

162.   At all material and relevant times, CRC Industries placed CRC Duster into the stream of commerce, including within the State of Minnesota, despite knowing of the foreseeable misuse of CRC Duster as an inhalant.

163.   At all material and relevant times, CRC Industries placed CRC Duster into the stream of commerce, including within the State of Minnesota, despite knowledge of the foreseeable misuse of CRC Duster as an inhalant, and that this foreseeable use would cause harm to innocent bystanders, including in motor vehicle crashes.

164.   At all material and relevant times, CRC Industries provided false and misleading warnings, labels, promotions, marketing, and information and failed to provide adequate warning of the risks and dangers associated with the foreseeable misuse of CRC Duster that might befall not just the person inhaling CRC Duster, but innocent bystanders in motor vehicle crashes as well.

165.   At all material and relevant times, CRC Industries failed to provide adequate warning of the risks and dangers associated with the foreseeable misuse of CRC Duster that might befall not just the person inhaling CRC Duster, but innocent bystanders in motor vehicle crashes as well.

166.   Reasonable further investigation and discovery may show that at all material and relevant times, CRC Industries falsely claimed that CRC Duster

contained a bittering agent that would "prevent inhalant abuse," when in fact CRC Duster contained no such bittering agent.

167.   Reasonable further investigation and discovery may show that CRC Industries falsely claimed that CRC Duster contained a bittering agent that would prevent inhalant abuse, when in fact the bittering agent was completely ineffective.

168.   At all material and relevant times, CRC Industries failed to add a bittering agent or other product to CRC Duster that effectively deterred inhalant abuse.

169.   At all material and relevant times, people predictably and foreseeably continued to use CRC Duster to get high, drive while high on CRC Duster, lose control of their vehicles, and injure or kill innocent bystanders, including Cynthia McDougall.

170.   At all times relevant, CRC Industries maliciously and wantonly and willfully disregarded the rights and safety of the public, including Cynthia McDougall, because CRC Industries placed its dust remover products containing difluoroethane—such as CRC Duster—into the stream of commerce, including within the State of Minnesota, despite knowledge that people will continue to use CRC Duster to get high, drive while high on CRC Duster, lose control of their vehicles, and injure or kill innocent bystanders, including Cynthia McDougall.

## CYNTHIA MCDOUGALL'S FATAL INJURIES

171.   On July 22, 2019, Kyle Neumiller ("Neumiller") was driving his vehicle in the City of Baudette, Lake of the Woods County, State of Minnesota.

172.    While driving, Neumiller huffed a can of dust remover.

173.    The dust remover that Neumiller huffed from was CRC Industries' "Duster" product, which was retrieved from Neumiller's vehicle by the Minnesota State Patrol after the fatal crash:



174.    Neumiller got high from intentionally huffing CRC Duster.

175.    Neumiller lost consciousness and/or all control of his bodily movements when he was high on CRC Duster and driving.

176.    Neumiller lost the ability to drive and the ability to maintain control of his vehicle when he was high on CRC Duster.

177.    Because Neumiller predictably and foreseeably huffed CRC Duster that he purchased in the State of Minnesota, got high, lost consciousness and/or all control of his bodily movements, and lost the ability to maintain control of his vehicle, he

predictably and foreseeably crossed over the center line, drove into oncoming traffic, and collided head on with Cynthia McDougall's vehicle, while Mrs. McDougall was lawfully driving on the other side of the highway. The collision caused Mrs. McDougall's serious and fatal injuries. Following the collision, Mrs. McDougall was transported to Lakewood Health Center, where she was pronounced deceased.

178.    The purchase of the CRC Duster, the crash, and Mrs. McDougall's death all occurred in the City of Baudette, Lake of the Woods County, State of Minnesota.

## FIRST CAUSE OF ACTION

### Strict Products Liability – Defective Design

179.    David McDougall repeats, reiterates, re-alleges and incorporates by reference every allegation contained in the previous paragraphs as if fully set forth herein at length.

180.    At all material and relevant times, the CRC Duster product at issue in this case was misused in a reasonably foreseeable manner.

181.    At all material and relevant times, Cynthia McDougall's serious injuries and death were reasonably foreseeable.

182.    At all material and relevant times, Cynthia McDougall's injuries and death were a reasonably foreseeable result of CRC Duster's defective design.

183.    At all material and relevant times, safer, technologically feasible, and practical alternative designs were, have been, and are available to CRC Industries that would have prevented Cynthia McDougall's injuries and death and the resulting

damages to her family, without substantially impairing the reasonably anticipated and/or intended function of CRC Duster.

184.   At all material and relevant times, safer, technologically feasible, and practical alternative designs were, have been, and are available to CRC Industries that would have prevented or substantially reduced the risk of Cynthia McDougall's injuries and death, without rendering CRC Duster too expensive for it to be reasonably marketable.

185.   At all material and relevant times, the risk of harm caused by CRC Duster's defective design has outweighed and continues to outweigh its utility.

186.   At all material and relevant times, safer designs for CRC Duster were available to CRC Industries that were practicable, feasible, and/or otherwise reasonable alternative designs and/or formulations that would have prevented or substantially reduced the risk of injury, harm, and death to innocent bystanders in motor vehicle crashes.

187.   At all material and relevant times, safer, technologically feasible, and practical alternative designs were, have been, and are available to CRC Industries that would have reduced and/or prevented foreseeable misuse of CRC Duster.

188.   Reasonable, safer alternative designs of CRC Duster, include, but are not limited to, modifications in the packaging of CRC Duster, including a modification so that less DFE can be released during each spray.

189.    Reasonable, safer alternative designs of CRC Duster, include, but are not limited to, modifications in the formulation, and/or amount, and/or inclusion altogether of the propellant, DFE, found in CRC Duster.

190.    Reasonable, safer alternative designs of CRC Duster, include, but are not limited to, modifications in the formulation, and/or amount, and/or inclusion altogether of a bittering agent in CRC Duster.

191.    Reasonable, safer alternative designs of CRC Duster, include, but are not limited to, providing adequate warnings and instructions on the CRC Duster product packaging.

192.    Multiple safer, feasible alternative designs of CRC Duster were, have been, and are available to CRC Industries, yet, CRC Industries has marketed and sold, and continues to market and sell, CRC Duster, a defectively designed and unreasonably dangerous product.

193.    At all material and relevant times, it was reasonably foreseeable that Cynthia McDougall could be injured and/or killed as a result of the design defects of the CRC Duster product at issue in this case.

194.    The design defect or defects concerning the CRC Duster product at issue in this case were a substantial, direct, and proximate cause of Cynthia McDougall's injuries and death and the resulting damages to her family.

## SECOND CAUSE OF ACTION

### Strict Products Liability –Manufacturing Defect

195.   David McDougall repeats, reiterates, re-alleges and incorporates by reference every allegation contained in the previous paragraphs as if fully set forth herein at length.

196.   At all material and relevant times, the CRC Duster product at issue in this case was in substantially the same condition as it was when it left CRC Industries' control.

197.   At all material and relevant times, the CRC Duster product at issue in this case was not altered in any way since the time it left CRC Industries' control.

198.   At all material and relevant times, the CRC Duster product at issue in this case contained a manufacturing defect and was not reasonably fit, suitable or safe.

199.   At all material and relevant times, the CRC Duster product at issue in this case deviated from the design specifications, formulae, and performance standards of CRC Industries' CRC Duster.

200.   At all material and relevant times, the CRC Duster can at issue in this case was manufactured differently than the same product as manufactured according to CRC Industries' manufacturing standards.

201.   At all material and relevant times and upon information and belief, concerning the CRC Duster product at issue in this case, any bittering agent that CRC Industries advertised as an ingredient added to CRC Duster to discourage, deter, or prevent inhalant abuse, did not work for its intended or advertised purpose.

47

202.   At all material and relevant times and upon information and belief CRC Industries advertised that CRC Duster's bittering agent, and/or formulation "prevent[s] inhalant abuse."  Because the CRC Duster product in this case was abused, a manufacturing defect apparently existed in the CRC Duster can at issue in this case, as it was unable to deter abuse.

203.   Reasonable further investigation and discovery may show that the CRC Duster product at issue in this case did not contain a bittering agent whatsoever.

204.   Upon information and belief, reasonable investigation and discovery may show that some cans of CRC Duster manufactured by CRC Industries contain a bittering agent and some cans do not, although CRC Industries' design specifications and performance standards mandate that all CRC Duster cans contain a bittering agent.

205.   Upon information and belief, reasonable investigation and discovery may show that, concerning the CRC Duster product at issue in this case, the bittering agent did not uniformly mix with the DFE, and, thus, the bittering agent simply rested inside the can and did not escape the can along with DFE when the can was sprayed.

206.   At all material and relevant times, it was reasonably foreseeable that Cynthia McDougall could be injured and killed as a result of the manufacturing defect or defects of the CRC Duster product at issue in this case.

207.   At all material and relevant times, the manufacturing defect or defects concerning the CRC Duster product at issue in this case were a substantial, direct,

48

and proximate cause of Cynthia McDougall's injuries and death and the resulting damages to her family.

## THIRD CAUSE OF ACTION

## Strict Products Liability – Failure to Warn

208.   David McDougall repeats, reiterates, re-alleges and incorporates by reference every allegation contained in the previous paragraphs as if fully set forth herein at length.

209.   At all material and relevant times, CRC Industries failed to provide an adequate warning on the CRC Duster can at issue in this case.

210.   At all material and relevant times, CRC Industries knew or should have known that drivers impaired by inhaling CRC Duster have injured bystanders in motor vehicle crashes.

211.   At all material and relevant times, CRC Industries knew or should have known that a driver misusing CRC Duster could cause injury, harm, and/or death to innocent bystanders in motor vehicle crashes.

212.   At all material and relevant times, CRC Industries did not act as  a reasonably prudent manufacturer, because a reasonably prudent manufacturer would have kept reasonably familiar with news events and stories, scientific studies, and other reliable information concerning the foreseeable misuse of CRC Duster while driving, which has caused injury, harm, and death to innocent bystanders in motor vehicle crashes, and a reasonably prudent manufacturer would have enhanced a product's warning based on this information.

213.   At all material and relevant times, CRC Industries provided false and misleading warnings, labels, promotions, marketing, and information about the deterrent effect of CRC Duster's bittering agent.

214.   At all material and relevant times, CRC Industries did not provide any warning on the CRC Duster can at issue in this case concerning the risks and dangers associated with the foreseeable misuse of CRC Duster, including, the risks and dangers of causing injury, harm, and/or death to innocent bystanders in motor vehicle crashes.

215.   At all material and relevant times, CRC Industries failed to provide adequate warnings and/or instructions to others in the chain of distribution about the risks and dangers associated with the foreseeable misuse of CRC Duster, including the risks and dangers of causing injury, harm, and death to innocent bystanders in motor vehicle crashes.

216.   At all material and relevant times, CRC Industries failed to provide adequate warnings and/or instructions about the risks and dangers associated with the foreseeable misuse of CRC Duster that might befall not just the person inhaling CRC Duster, but might injure innocent bystanders in motor vehicle crashes.  CRC Industries failed to convey this information to distributors and/or retailers of CRC Duster, as well as to foreseeable misusers of CRC Duster, regulatory authorities, law enforcement authorities, legislative authorities, news organizations, and/or any other relevant service or organization that could implement restrictions concerning the improper use and/or sale of CRC Duster.

50

217.   At all material and relevant times, had CRC Industries provided adequate warnings or instructions about the risks and dangers associated with the foreseeable misuse of CRC Duster, including, warnings concerning the risks and dangers of causing injury, harm, and/or death to innocent bystanders in motor vehicle crashes, that warning would have been heeded by the CRC Duster misuser involved in the motor vehicle crash that injured and killed Cynthia McDougall.

218.   At all material and relevant times, CRC Industries' failure to provide adequate warnings to the foreseeable misuser of the CRC Duster product at issue in this case was a substantial, direct, and proximate cause of Cynthia McDougall's injuries and death and the resulting damages to her family.

## FOURTH CAUSE OF ACTION

## Negligence

219.   David McDougall repeats, reiterates, re-alleges and incorporates by reference every allegation contained in the previous paragraphs as if fully set forth herein at length.

220.   At all material and relevant times, CRC Industries had a duty to exercise reasonable care in the design, research, formulation, manufacture, production, marketing, testing, supply, promotion, packaging, sale, distribution and/or monitoring of CRC Duster, including, a duty to assure that the product would not cause foreseeable injuries through foreseeable misuse.

221.   At all material and relevant times, CRC Industries owed a duty to exercise reasonable care in providing reasonable and adequate warnings of the risks

and dangers associated with the foreseeable misuses of CRC Duster, including the risk and danger of injury, harm, and death to innocent bystanders, such as Cynthia McDougall, caused by the foreseeable misuse of CRC Duster as an inhalant while driving.

222.   At all material and relevant times, CRC Industries breached its duty when it failed to exercise reasonable care in the designing, testing, producing, processing, assembling, formulating, inspecting, researching, promoting, labeling, marketing, advertising, distributing, and selling of CRC Duster in that CRC Industries:

a.   Failed to use due care in the designing, manufacturing, and/or distributing of CRC Duster to avoid the foreseeable risk of injury, harm, and death to innocent bystanders caused by the foreseeable misuse of CRC Duster as an inhalant while driving.

b.   Failed to use due care in providing reasonable and adequate warnings of the risks and dangers associated with the foreseeable misuses of CRC Duster, including the risk and danger of injury, harm, and death to innocent bystanders caused by the foreseeable misuse of CRC Duster as an inhalant while driving.

223.   At all material and relevant times, CRC Industries' negligent and wrongful acts and omissions of as alleged herein had a substantial part in bringing about the death of Cynthia McDougall.

224.    As a direct and proximate result of CRC Industries' carelessness, negligence, recklessness, deception, and concealment, and of its design, manufacture, distribution, and sale of an unreasonably dangerous product, Cynthia McDougall's Next-of-Kin, as well as David McDougall individually, have suffered and will suffer permanent and substantial losses, harms and damages, as more fully described herein.

## FIFTH CAUSE OF ACTION

## Breach of Express Warranty

225.    David McDougall repeats, reiterates, re-alleges and incorporates by reference every allegation contained in the previous paragraphs as if fully set forth herein at length.

226.    At all material and relevant times, CRC Industries expressly warranted that CRC Duster was safe, of merchantable quality, and adequately fit for use.

227.    At all material and relevant times, CRC Industries made these warranties through its website, product labeling, product descriptions, and promises, including publicly made written and verbal assurances of safety, that was intended to create a demand for CRC Duster.

228.    At all material and relevant times, CRC Industries breached various express warranties including:

    a.    CRC Industries has touted its commitment to prevent inhalant abuse.

b.    CRC Industries products, including CRC Duster, "contains a bittering agent to help prevent inhalant abuse";

229.   At all material and relevant times, CRC Duster did not conform to CRC Industries' express warranties because it contained a manufacturing defect and was not reasonably fit, suitable or safe.  The bittering agent that CRC Industries may have indicated as an ingredient added to CRC Duster to deter "inhalant abuse," in fact, did not work for its intended or advertised purpose.  CRC Industries failed to design and manufacture CRC Duster in a manner such that the bittering agent or another product effectively deterred inhalant abuse, so as to avoid the foreseeable risk of injury, harm, and death to innocent bystanders in motor vehicle crashes.

230.   At all material and relevant times, CRC Duster did not conform to CRC Industries' express warranties because it was defective in design or formulation in that, when it left the hands of CRC Industries, it was in an unreasonably dangerous and defective condition as designed, and posed a foreseeable risk of injury, harm, and death to innocent bystanders in motor vehicle crashes.

231.   At all material and relevant times, people predictably and foreseeably relied on CRC Industries' false and misleading warnings, labels, promotions, marketing, and information about the risks and dangers associated with the foreseeable misuse of CRC Duster that might befall not just the person inhaling CRC Duster, but innocent bystanders in motor vehicle crashes as well.

232.   At all material and relevant times, people predictably and foreseeably continued to use CRC Duster to get high, drive while high on CRC Duster, lose control

of their vehicles, and injure or kill innocent bystanders, including Cynthia McDougall.

233.   Cynthia McDougall could not have discovered the breached warranties and realized CRC Duster's danger.

234.   At all material and relevant times, CRC Industries breached its express warranties, including under Minn. Stat. § 336.2-313, because CRC Duster was not safe, of merchantable quality, or adequately fit for use.

235.   At all material and relevant times, CRC Industries' breach of its express warranties had a substantial part in bringing about the death of Cynthia McDougall.

236.   As a direct and proximate result of CRC Industries' actions, omissions, and misrepresentations, Cynthia McDougall's Next-of-Kin, as well as David McDougall individually, have suffered and will suffer permanent and substantial losses, harms and damages, as more fully described herein.

## SIXTH CAUSE OF ACTION

## Breach of Implied Warranty

237.   David McDougall repeats, reiterates, re-alleges and incorporates by reference every allegation contained in the previous paragraphs as if fully set forth herein at length.

238.   At all material and relevant times, CRC Industries designed, manufactured, distributed, advertised, promoted, and sold CRC Duster.

239.   At all material and relevant times, CRC Industries impliedly warranted that CRC Duster was safe, of merchantable quality, and adequately fit for foreseeable use.

240.   At all material and relevant times, CRC Industries was aware that consumers, including Neumiller, would intentionally inhale CRC Duster for its intoxicating effects while driving.

241.   At all material and relevant times, consumers and the public, including Cynthia McDougall and Neumiller reasonably relied upon the judgment and sensibility of CRC Industries to sell CRC Duster only if it was indeed of merchantable quality and safe and fit for its foreseeable uses.

242.   At all material and relevant times, CRC Industries breached its implied warranties, including under Minn. Stats. §§ 336.2-314 and 336.2-315, to consumers and the public, including Cynthia McDougall and Neumiller, because the CRC Duster was not of merchantable quality or safe and fit for its intended use.

243.   At all material and relevant times, consumers and the public, including Cynthia McDougall and Neumiller, reasonably relied upon CRC Industries' implied warranties for CRC Duster.

244.   At all material and relevant times, consumers and the public, including Cynthia McDougall and Neumiller, by the use of reasonable care, would not have discovered the breached warranty and realized CRC Duster's danger.

245.   At all material and relevant times, CRC Industries' breach of its implied warranties had a substantial part in bringing about the death of Cynthia McDougall.

246.   As a direct and proximate result of CRC Industries' actions, omissions, and misrepresentations, Cynthia McDougall's Next-of-Kin, as well as David McDougall individually, have suffered and will suffer permanent and substantial losses, harms and damages, as more fully described herein.

### SEVENTH CAUSE OF ACTION

### Unlawful Trade Practices, Deceptive Trade Practices, False Statement in Advertising, and Unlawful Practices Acts

247.   David McDougall repeats, reiterates, re-alleges and incorporates by reference every allegation contained in the previous paragraphs as if fully set forth herein at length.

248.   David McDougall brings these claims pursuant to Minn. Stat. §§ 8.31, subd. 3a, 325D.13, 325D.44, 325F.67, and 325F.69.

249.   At all material and relevant times, CRC Industries knew or should have known that people were using CRC Duster in a manner that resulted in death and injury to innocent bystanders in motor vehicle crashes.

250.   At all material and relevant times, CRC Industries placed CRC Duster into the stream of commerce, including within the State of Minnesota, despite knowledge of the foreseeable misuse of CRC Duster as an inhalant, and that this foreseeable use would cause harm to innocent bystanders, including in motor vehicle crashes.

251.   At all material and relevant times, CRC Industries engaged in deceptive, unconscionable, unfair and misleading commercial practices in the marketing and sale of CRC Duster that CRC Industries knew to be defective.

252.   At all material and relevant times, CRC Industries provided false and misleading warnings, labels, promotions, marketing, and information about the risks and dangers associated with the foreseeable misuse of CRC Duster that might befall not just the person inhaling CRC Duster, but innocent bystanders in motor vehicle crashes as well.

253.   At all material and relevant times, CRC Industries induced people to use CRC Duster in a manner that resulted in death and injury to innocent bystanders in motor vehicle crashes, with the intent that they rely thereon in connection with the sale or advertisement of CRC Duster through the use of deception, fraud, false advertising, false pretenses, misrepresentations, unfair and/or deceptive practices and the concealment and suppression of material facts, including but not limited to fraudulent statements, concealments and misrepresentations identified herein and above.

254.   At all material and relevant times, CRC Industries' negligent and wrongful acts and omissions as alleged herein had a substantial part in bringing about the death of Cynthia McDougall.

255.   As a direct and proximate result of CRC Industries' carelessness and negligence, and of its design, manufacture, distribution, and sale of an unreasonably dangerous product, Cynthia McDougall's Next-of-Kin, as well as David McDougall individually, have suffered and will suffer permanent and substantial losses, harms and damages, as more fully described herein.

## EIGHTH CAUSE OF ACTION

## Public Nuisance

256.   David McDougall repeats, reiterates, re-alleges and incorporates by reference every allegation contained in the previous paragraphs as if fully set forth herein at length.

257.   At all material and relevant times, CRC Industries knew or should have known that people continued to abuse CRC Duster in order to get high despite the existence of a "bittering agent" in the product.

258.   At all material and relevant times, CRC Industries knew or should have known that people were using CRC Duster in a manner that resulted in death and injury to innocent bystanders in motor vehicle crashes.

259.   At all material and relevant times, CRC Industries engaged in deceptive, unconscionable, unfair and misleading commercial practices in the marketing and sale of CRC Duster that CRC Industries knew to be defective.

260.   At all material and relevant times, CRC Industries provided false and misleading warnings, labels, promotions, marketing, and information about the risks and dangers associated with the foreseeable misuse of CRC Duster that might befall not just the person inhaling CRC Duster, but innocent bystanders in motor vehicle crashes as well.

261.   At all material and relevant times, CRC Industries induced people to use CRC Duster in a manner that resulted in death and injury to innocent bystanders in motor vehicle crashes, with the intent that people rely thereon in connection with

the sale or advertisement of CRC Duster through the use of deception, fraud, false advertising, false pretenses, misrepresentations, unfair and/or deceptive practices and the concealment and suppression of material facts, including but not limited to fraudulent statements, concealments and misrepresentations identified herein and above.

262.    At all material and relevant times, CRC Industries' actions and omissions have created a public nuisance.  CRC Industries' carelessness, negligence, recklessness, deception, and concealment constitutes an unreasonable interference with the exercise of the common rights of the health, safety, and welfare to the citizens of Minnesota, and has maintained or permitted a condition which unreasonably endangers the safety and health of the members of the general public in Minnesota, including, but not limited to innocent bystanders in motor vehicle crashes.

263.    CRC Industries' failure to inform the public about the risks and dangers associated with the foreseeable misuse of CRC Duster, and failure to disclose that CRC Duster lacked the bittering agent to prevent inhalant abuse, has prevented the public from knowing of a real danger, and has thereby endangered the safety and health of the members of the general public by allowing more people to continue to inhale and abuse CRC Duster, resulting in an increased risk and danger of injury, harm, and death to innocent bystanders in motor vehicle crashes.

264.    CRC Industries' carelessness, negligence, recklessness, deception, and concealment is of a constant and continuing nature.  CRC Industries' actions and omissions will undoubtedly continue to cause long-lasting effects on members of the

general public in Minnesota, including, but not limited to innocent bystanders in motor vehicle crashes.

265.   CRC Industries' carelessness, negligence, recklessness, deception, and concealment was specially injurious to Cynthia McDougall's health and personal enjoyment of life as Cynthia McDougall was fatally killed by a driver who inhaled and abused CRC Duster.

266.   CRC Industries' carelessness, negligence, recklessness, deception, and concealment was specially injurious to the Next-of-Kin of Cynthia McDougall and their personal enjoyment of life in that when the Next-of-Kin of Cynthia McDougall finally discovered CRC Industries' carelessness, negligence, recklessness, deception, and concealment, the Next-of-Kin of Cynthia McDougall experienced mental and emotional anguish because Cynthia McDougall had been the victim of CRC Industries' carelessness, negligence, recklessness, deception, and concealment.

267.   At all material and relevant times, the foreseeable risks of injury, harm, and death to innocent bystanders in motor vehicle crashes due to CRC Duster far outweighed the benefits associated with CRC Duster.

268.   CRC Industries' design, manufacture, marketing, distribution, and sale of CRC Duster, if unabated, will continue to cause an unreasonable interference with public rights of the members of the general public in Minnesota, including, but not limited to innocent bystanders in motor vehicle crashes.

269.   The negligent and wrongful acts and omissions of CRC Industries as alleged herein had a substantial part in bringing about the death of Cynthia McDougall.

270.   As a direct and proximate result of CRC Industries' carelessness, negligence, recklessness, deception, and concealment, and of its design, manufacture, distribution, and sale of an unreasonably dangerous product, Cynthia McDougall's Next-of-Kin, as well as David McDougall individually, have suffered and will suffer permanent and substantial losses, harms and damages, as more fully described herein.

## DAMAGES

271.   David McDougall repeats, reiterates, re-alleges and incorporates by reference every allegation contained in the previous paragraphs as if fully set forth herein at length.

272.   As a direct and proximate result of CRC Industries' carelessness, negligence, recklessness, deception, concealment, and violation of Minn. Stat. §§ 325D.13, 325D.44, 325F.67, and 325F.69, and of its design, manufacture, distribution, and sale of an unreasonably dangerous product, Cynthia McDougall's Next-of-Kin, as well as David McDougall individually, have suffered and will suffer permanent and substantial losses, harms and damages, including but not limited to, the past and future loss of advice, comfort, assistance, companionship, protection, counsel, care, guidance, services, support, and aid of Cynthia McDougall, and other

pecuniary loss, all to their damage in an amount in reasonably in excess of Seventy-Five Thousand Dollars ($75,000).

## NOTICE OF INTENT TO SEEK PUNITIVE DAMAGES

273.   Please be advised that after commencement of this action, David McDougall intends to move the Court for permission to amend this Complaint to allege a claim for punitive damages against CRC Industries because, on information and belief, CRC Industries acted with deliberate disregard for the rights and safety of others under Minn. Stat. § 549.20.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, David A. McDougall, Individually and as Trustee for the Next-of-Kin of Decedent Cynthia A. McDougall, prays for judgment against CRC Industries, as follows:

1.   Awarding Plaintiff damages against CRC Industries in an amount reasonably in excess of Seventy-Five Thousand Dollars ($75,000.00);

2.   For injunctive relief:

   a.   prohibiting the sale of dust removers designed, manufactured, distributed, and sold by CRC Industries containing difluoroethane to minors;

   b.   prohibiting the sale of more than one can of dust remover designed, manufactured, distributed, and sold by CRC Industries containing difluoroethane per consumer within a 30-day period of time;

     c.    prohibiting CRC Industries from designing, manufacturing, distributing, and selling dust removers containing difluoroethane without an effective physical mechanism or chemical composition to deter inhalant abuse.

3.    Ordering an abatement of the ongoing public nuisance conditions caused by CRC Duster;

4.    Awarding Plaintiff pre-judgment and post-judgment interest;

5.    Awarding Plaintiff his reasonable costs and disbursements;

6.    Awarding Plaintiff punitive damages;

7.    Awarding Plaintiff costs of investigation and reasonable attorney's fees pursuant to Minn. Stat. § 8.31, subd. 3a, 325D.13, 325D.44, 325F.67, and 325F.69;

8.    Awarding such additional relief as the Court may deem just and equitable.

**A JURY TRIAL IS HEREBY DEMANDED BY PLAINTIFF.**

Dated:  July 1, 2020                          **ROBINS KAPLAN LLP**


By:   /s/ Tara D. Sutton
      Tara D. Sutton (#23199X)
      Philip Sieff (#169845)
      Gary L. Wilson (#179012)
      Jason L. DePauw (#0392150)
      2800 LaSalle Plaza
      800 LaSalle Avenue
      Minneapolis, MN 55402
      Telephone: 612.349.8500
      Facsimile: 612.339.4181
      *psieff@robinskaplan.com*
      *tsutton@robinskaplan.com*
      *gwilson@robinskaplan.com*
      *jdepauw@robinskaplan.com*

      ***Attorneys for Plaintiff David***
      ***McDougall***