UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| David A. McDougall, Individually and as Trustee for the Next-of-Kin of Decedent, Cynthia A. McDougall,<br><br>Plaintiff,<br><br>v.<br><br>CRC Industries, Inc., and John Doe Company Defendants #1-10,<br><br>Defendants. | Case No. 20-cv-1499 (JRT/LIB)<br><br>**PLAINTIFF<br>DAVID A. McDOUGALL'S<br>STATEMENT OF THE CASE** |

Pursuant to the Court's November 14, 2023 Notice of Assignment of Cases for Trial and Trial Memorandum (ECF Nos. 146 and 146-1), Plaintiff David A. McDougall provides the following description of the factual and legal issues that he expects will be presented at trial.

## I.  FACTUAL CONTENTIONS

The facts relating to the product at issue—CRC Duster—a dust remover product, are undisputed. Duster is a can filled with a 100% chemical propellant known as 1,1-Difluoroethane (DFE), a well-known central-nervous-system depressant once studied as a surgical anesthetic. DFE causes immediate, intoxicating, and incapacitating effects when inhaled in a concentrated fashion. Dust removers containing DFE have long been

associated with substance abuse and misuse, in part because they are inexpensive and widely available at retail locations for about seven to ten dollars per can.

Defendant CRC Industries, Inc.'s knowledge of the "hidden epidemic"[1] of dust remover misuse is also undisputed.  CRC has admitted knowing at all relevant times that people intentionally inhale Duster and similar dust removers for their intoxicating effects.  And CRC's three-part strategy for addressing dust remover misuse—ineffectiveness aside—is proof that it understood the prevalence and dangerousness of huffing Duster.  First, CRC included language on its Duster cans since at least 2003 that deliberate misuse by concentrating and inhaling the product is harmful or fatal and that inhalation abuse can cause death.  Second, CRC donated small amounts of money annually to the Alliance for Consumer Education, a nonprofit arm of an aerosol industry group whose express mission was inhalant-abuse education. Third, for approximately four years, CRC added a bitterant to Duster and advertised that it did so to prevent inhalant abuse.  CRC discontinued use of the bitterant after learning there was no evidence the bitterant deterred Duster misuse but took no additional steps to address that misuse.

---

[1] *See* Consumer Product Safety Commission Staff Briefing Package – Aerosol Dusters at 85 (July 20, 2022) https://www.cpsc.gov/s3fs-public/Petition-Requesting-Rulemaking-to-Establish-Safety-Standard_0.pdf?VersionId=GNEl7pYZUBOxf1BLSC0f4.X6TlA8gT4f.

McDougall also contends that the facts surrounding the crash that killed Cynthia McDougall are straightforward. On July 22, 2019, Cynthia was driving her vehicle on State Highway 172 in Baudette, Lake of the Woods County, Minnesota when she was struck and killed in a crash by another vehicle. The other vehicle was driven by Kyle Neumiller, who huffed Duster, crossed over the center line, drove into oncoming traffic, and struck Cynthia's car head on. Though CRC argues otherwise, the evidence will demonstrate that at the time of the collision, Neumiller was intoxicated due to inhaling Duster; his intoxication led to the loss of his bodily functions and inability to maintain control of his vehicle. The evidence will also demonstrate that Neumiller's long history of huffing Duster and experiencing its debilitating effects meant that when he chose to misuse Duster on July 22, 2019, he was substantially certain that harm would result from his huffing while driving.

Upon these threshold showings, McDougall's case will shift to CRC's knowledge of the danger posed by its product and CRC's irresponsible—and indefensible—inaction in the face of that knowledge. CRC knew its product was dangerous but did not take any meaningful steps to guard against the danger it posed. Accordingly, the bulk of this trial will center on the following factual issues:

**Was Duster dangerous when huffed?**

**Yes.** Duster containing DFE is highly intoxicating and has an immediate effect. McDougall expects that the evidence on the toxicity of Duster will be undisputed because it is irrefutable. Further, CRC knew that huffing Duster led to serious, and often fatal, motor vehicle crashes.

**Could CRC reasonably foresee that people huffed Duster?**

**Yes.** The danger posed by huffing was more than objectively foreseeable. CRC actually knew it was happening. Numerous records, publications, and reports—including internal reports from CRC itself and published scientific literature—document the long history of Duster misuse, including while driving, and show CRC's knowledge of Duster misuse and its deadly consequences. Foreseeability is a question for the jury. *See Montemayor v. Sebright Prods., Inc.*, 898 N.W.2d 623, 629 (Minn. 2017) ("Although duty is generally a legal question for the court to decide, it is well established that foreseeability is a question for the jury if there is a specific factual dispute concerning a manufacturer's awareness of a risk." (internal citation and quotations omitted)).

**Did CRC take reasonable steps to protect against the known danger posed by its product?**

**No.** As an initial matter, CRC's claim that it guarded against huffing proves that huffing was foreseeable. But CRC only paid lip service to the

4

danger created by its product.  It donated less than $1,000 a year to the anti-huffing educational efforts of the Alliance for Consumer Education, and its can warned more strongly against using Duster on cameras than it did of the dangers of driving under the influence of Duster.  CRC added a bitterant to its Duster because it knew huffing was a problem.  It later removed the bitterant because there was no evidence that it deterred Duster misuse.  Yet CRC took no additional action to address the scourge of huffing, despite knowing that huffing continued well after it removed the bitterant.  As CRC was well aware, none of CRC's meager efforts to address huffing was effective.

**What damages should be awarded?**

McDougall will ask the jury to award wrongful death damages for the loss of Cynthia's counsel, guidance, aid, advice, comfort, assistance, companionship, and protection.  The jury will evaluate and determine the amount of these damages, including whether to award all or part of the $1,473,000.00 in the McDougalls' economic losses.  McDougall will also ask the jury to award damages for Cynthia's funeral expenses.

## II.   MCDOUGALL'S LEGAL CLAIMS

McDougall will hold CRC accountable under each of the remaining legal theories: strict liability for design defect, strict liability for failure to warn, and common-law negligence.  As the Court recognized in its summary judgment ruling, elements of duty and proximate causation apply to all of McDougall's

claims, and the elements both turn on foreseeability. *See Whiteford ex rel. Whiteford v. Yamaha Motor Corp., U.S.A.*, 582 N.W.2d 916, 918 (Minn. 1998); *McDougall v. CRC Indus., Inc.*, 523 F. Supp. 3d 1061, 1072 (D. Minn. 2021); *Canada ex rel. Landy v. McCarthy*, 567 N.W.2d 496, 507 (Minn. 1997). McDougall will satisfy that showing for each claim.

### A. Strict Liability for Design Defect

A manufacturing defect exists when a product is "physically flawed, damaged, or incorrectly assembled . . . [and] such a defect existed in the product when it left the hands of the manufacturer." *Webb v. Ethicon Endo-Surgery, Inc.*, No. 13-1947, 2014 WL 7213202, at *4 (D. Minn. Dec. 17, 2014) (internal citation and quotation omitted); *Harrison ex rel. Harrison v. Harrison*, 733 N.W.2d 451, 454 n.2 (Minn. 2007). A manufacturer is obligated to address defects related to unintended, but reasonably foreseeable, uses. *Bilotta v. Kelly Co.*, 346 N.W.2d 616, 621 (Minn. 1984).

Accordingly, McDougall will establish CRC's liability if he proves by the preponderance of the evidence that huffing Duster was reasonably foreseeable and that its Duster product was therefore unreasonably dangerous.

### B. Strict Liability for Failure to Warn

To establish a claim for the failure to warn, a plaintiff must prove three elements: "(1) the defendant had a duty to warn; (2) the defendant breached that duty by providing an inadequate warning (or no warning at all); and (3)

6

the defendant's inadequate (or nonexistent) warning caused the plaintiff's damages." *Kapps v. Biosense Webster, Inc.*, 813 F. Supp. 2d 1128, 1155 (D. Minn. 2011) (citing *Balder v. Haley*, 399 N.W.2d 77, 81 (Minn. 1987)). CRC has argued that Neumiller's failure to read the Duster label on the day of the crash precludes McDougall's failure-to-warn claim, but as the Court previously noted, Neumiller admitted that he read the label at an earlier date.

Accordingly, McDougall will establish CRC's liability if he proves by the preponderance of the evidence that CRC's warnings were inadequate regarding the potential harms associated with inhalation of Duster and that CRC provided no warning at all related to potential harms to innocent bystanders or related to operation of a motor vehicle.

### C. Negligence

To establish liability based upon negligence, a plaintiff must demonstrate "(1) the existence of a duty of care, (2) a breach of that duty, (3) an injury, and (4) that the breach of the duty of care was a proximate cause of the injury." *Domagala v. Rolland*, 805 N.W.2d 14, 22 (Minn. 2011).

In Minnesota, a product manufacturer has a duty to protect those who might be injured from foreseeable misuse of its product. *See Whiteford*, 582 N.W.2d at 919; *Bilotta*, 346 N.W.2d at 621; *Diehl v. 3M Co.*, No. A19-0354, 2019 WL 4412976, at *2 (Minn. Ct. App. Sept. 16, 2019). A manufacturer has that duty regardless of whether the manufacturer was or was not involved in the

product's misuse. *See Diehl*, 2019 WL 4412976, at *3. This duty extends to anyone exposed to danger when the product is misused in a reasonably foreseeable manner. *Id.* at *2. Consistent with the long line of Minnesota Supreme Court product liability cases and the Minnesota Court of Appeals decision in *Diehl* involving facts virtually identical to here, a dust remover manufacturer has a duty where it is reasonably foreseeable that individuals will misuse its product and become acutely impaired.

Because CRC knew about—and certainly could reasonably foresee—the risk of harm posed by users huffing Duster and driving under the influence of Duster, it had a duty of care to prevent that reasonably foreseeable harm. CRC breached that duty by not taking reasonable steps to prevent huffing, and that failure foreseeably caused Cynthia's death.

## III.   OTHER LEGAL ISSUES

McDougall expects that CRC will continue to try to improperly shift blame for its own failures onto Neumiller. CRC has twice argued that Neumiller's actions were the proximate cause of Cynthia's death. But as held by the Minnesota Supreme Court, "it is well established that manufacturers can be held liable despite intervening circumstances . . . if such circumstances were also foreseeable." *Montemayor*, 898 N.W.2d at 630. Neumiller's Duster misuse was foreseeable; therefore, causation exists. McDougall will raise this

8

issue as appropriate in objections at trial and when settling the jury instructions and verdict form.

## IV. UNRESOLVED EVIDENTIARY ISSUES

McDougall understands that the Court will hear the parties' motions *in limine*, filed concurrently herewith, at the pretrial conference. The parties met and conferred regarding their motions *in limine*; nevertheless, numerous issues remain for the Court to address in terms of motion *in limine*, objections to certain trial exhibits, and deposition designations.

## V. UNRESOLVED PROCEDURAL ISSUES

The parties have discussed, and McDougall provided Defendant with a draft trial management order. It proposed disclosures and exchanges at trial, such as the exchange of demonstratives, identification of witnesses to be called on a certain day, and the exchange of exhibits to be used with a certain witness. McDougall anticipates that the parties will be able to negotiate a stipulation to submit for the Court's approval.

## VI. ESTIMATED LENGTH OF TIME FOR TRIAL

McDougall understands that the Court has allotted 7-10 days for trial, inclusive of *voir dire*, openings, evidence presentation, and closings. McDougall is prepared to try this case within that time.

Respectfully submitted,

Dated:  December 22, 2023  **ROBINS KAPLAN LLP**

By: */s/Tara D. Sutton*
Tara D. Sutton (#23199X)
Philip Sieff (#169845)
Rashanda C. Bruce (#0400019)
Michael D. Reif (#0386979)
Julie A. K. Reynolds (#0392426)
800 LaSalle Ave., Suite 2800
Minneapolis, MN 55402
Telephone: 612.349.8500
Facsimile: 612.339.4181
*tsutton@robinskaplan.com*
*psieff@robinskaplan.com*
*rbruce@robinskaplan.com*
*mreif@robinskaplan.com*
*jreynolds@robinskaplan.com*

***Attorneys for Plaintiff David A. McDougall***