UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

DAVID A. MCDOUGALL,

                              Plaintiff,

v.

CRC INDUSTRIES, INC.,

                              Defendant.

Civil No. 20-1499 (JRT/LIB)

**MEMORANDUM OPINION & ORDER ON SPECIAL VERDICT FORM AND POST-INCIDENT EVIDENCE**

---

Tara D. Sutton, Philip L. Sieff, Rashanda C. Bruce, Michael D. Reif, and Julie Reynolds, **ROBINS KAPLAN LLP**, 800 LaSalle Avenue, Suite 2800, Minneapolis, MN 55402, for Plaintiff.

Robert J. Gilbertson, Virginia R. McCalmont, and David J. Wallace-Jackson, **FORSGREN FISHER**, 225 South Sixth Street, Suite 1500, Minneapolis, MN 55402, for Defendant.

This action proceeded to a jury trial on April 15, 2024. On April 16, outside the presence of the jury, the Court heard arguments from the parties on two unresolved and disputed issues. First, whether and how the fault of Kyle Neumiller, if proven, can be compared with that of Defendant CRC Industries, Inc. ("CRC") on the special verdict form. Second, the admissibility of Plaintiff David A. McDougall's proposed post-incidents evidence. The Court will address each issue in turn.

I.   NEUMILLER'S FAULT ON THE SPECIAL VERDICT

The parties first dispute whether and how the jury should be instructed to consider the fault of Kyle Neumiller, the driver of the vehicle who allegedly huffed CRC's aerosol

duster product ("CRC Duster") and subsequently lost consciousness and collided with Cynthia McDougall in a car accident that resulted in her death. McDougall requests a special verdict that (1) asks the jury whether Neumiller intentionally misused CRC duster while driving (i.e., knowing that his misuse was substantially certain to result in harm); and (2) allows the jury to compare CRC's fault to Neumiller's only if it finds Neumiller acted negligently, not intentionally. If Neumiller is found to have acted with the requisite intent, McDougall argues, comparing his fault to CRC's would effectively absolve the manufacturer of its obligation to take reasonable steps to prevent foreseeable misuse. On the other hand, CRC requests a special verdict that asks the jury to allocate fault between CRC and Neumiller regardless of whether Neumiller is an intentional or negligent tortfeasor. The parties' dispute thus centers on whether the fault of intentional tortfeasors can be compared with that of a negligent tortfeasor under Minnesota's comparative fault statute, and whether there are sufficient facts supporting McDougall's contention that Neumiller is an intentional tortfeasor.

On the first issue, Minnesota courts have previously declined to apply the comparative fault statute, Minn. Stat. § 604.01, to intentional tortfeasors. *E.g.*, *Florenzano v. Olson*, 387 N.W.2d 168, 175–76 (Minn. 1986); *Farmer's State Bank of Darwin v. Swisher*, 631 N.W.2d 796, 801 (Minn. 2001). Though, there is support for CRC's theory that the comparative fault statute should apply under these circumstances as well. *See* Michael K. Steenson, *Joint and Several Liability in Minnesota: The 2003 Model*, 30 Wm.

MITCHELL L. REV. 845, 878–81 (2004) (finding support for either position). Particularly salient is this Court's prior analysis of Minn. Stat. § 604.01 in *ADT Sec. Servs., Inc. v. Swenson, ex rel. Estate of Lee*, 687 F. Supp. 2d 884, 894–96 (D. Minn. 2009), which arose from the murders of a couple whose home had been equipped with an allegedly faulty ADT security system. *Id.* at 887. ADT asked that the Court allow the jury to apportion fault between ADT and Timothy Hawkinson, the man convicted of the couple's murders, and furthermore, to not hold ADT jointly and severally liable for damages corresponding to Hawkinson. *Id.* at 886-87. The Court refused to find as a matter of law that ADT, a negligent tortfeasor, would not be jointly and severally liable for harm caused by Hawkinson, an intentional tortfeasor, after concluding that Minnesota law would likely adopt the view that negligent tortfeasors should be prevented from limiting exposure to liability to the extent of their fault. *Id.* at 896. This case involves a similar conundrum. But the Court need not settle this issue now, because whether Neumiller is an intentional tortfeasor is an unresolved question of fact for the jury. That said, if the jury finds that Neumiller is an intentional tortfeasor, the Court will not permit CRC to limit its exposure to liability to the extent of its fault.

The second matter is whether the jury should be allowed to consider whether Neumiller is an intentional tortfeasor at all. While McDougall does not allege a specific tort that Neumiller committed, he argues that Neumiller's alleged decision to inhale CRC Duster to get high while driving meets Minnesota's intent threshold. Because harm from

such conduct was substantially certain to result, McDougall advances, Neumiller is an intentional tortfeasor. On the other hand, CRC argues that Neumiller's actions, while they may constitute intentional acts, do not constitute intentional torts, but rather negligence or recklessness. The test for intentionally tortious conduct is whether the tortfeasor "believes that the consequences are substantially certain to result" from his act. *Victor v. Sell*, 222 N.W.2d 337, 339 (Minn. 1974). And according to CRC, Neumiller has not provided statements that would supply a basis that he believed that the consequences of his action were substantially certain to result as required. However, intent may be inferred from the circumstances. *See R.W. v. T.F.*, 528 N.W.2d 869, 872 (Minn. 1995). "[T]he inference of intent arises when the nature and circumstances of the insured's act were such that harm was substantially certain to result." *Id.* (collecting cases). Here, the Court finds that a jury may reasonably infer from McDougall's proposed evidence that Neumiller acted with the requisite intent to meet the intentional tortfeasor threshold under Minnesota law. The factual record in the case could support either misconduct — intentional or negligent. Accordingly, the special verdict will be drafted to ask the jury to determine whether Neumiller, by huffing Duster while driving on July 22, 2019, engaged in intentional misconduct (i.e., misused CRC Duster with substantial certainty that harm would result). Regardless of the jury's finding on the intent issue, in the interest of thoroughness the jury will also be asked to apportion fault between CRC and Neumiller, even though the Court will not apply apportioning under Minnesota's comparative fault

statute if the jury finds that Neumiller engaged in intentional misconduct. The Court will apply apportioning if the jury finds that Neumiller engaged in negligent misconduct.

## II.     PLAINTIFF'S PROPOSED POST-INCIDENTS EVIDENCE

Next, the parties dispute the admissibility of McDougall's proposed similar incident exhibits that post-date the car accident at issue. CRC filed a motion in limine to exclude certain other incidents evidence, including incidents that post-date the accident underlying this case. (Def.'s Mot. in Limine, Dec. 22, 2023, Docket No. 182; Def.'s Mem. Supp. Mot. in Limine at 7, Dec. 22, 2023, Docket No. 185.) The Court deferred judgment on the motion in part, pending clarification as to what post-incident evidence McDougall sought to offer. Thereafter, McDougall identified three sets of post-incident exhibits to offer into evidence for the limited purpose of showing causation. (Pl.'s Letter to District Judge, Ex. 1 ("Post-Incident Exhibits") Apr. 14, 2024, Docket No. 223; Pl.'s Limiting Instruction, Apr. 14, 2024, Docket No. 222-1.) These include: (1) a news article on the death related to a similar case filed in Oregon state court called *Berry v. CRC Industries, Inc.*, (2) a YouTube video of a woman huffing CRC Duster while driving and crashing with her baby in the car, and (3) an email to one of CRC's directors regarding a 2023 motor collision in Connecticut involving CRC Duster. (Post-Incident Exhibits at 1.)

As the Court acknowledged in its summary judgment order, under Minnesota law a party's negligence is the proximate cause of an injury, if "the act [is] one which the party ought, in the exercise of ordinary care, to have anticipated was likely to result in injury to others" and the defendant's "conduct was a substantial factor in bringing about the

injury." *McDougall v. CRC Indus., Inc.*, No. 20-1499, 2023 WL 5515827, at *6 (D. Minn. Aug. 25, 2023) (quoting *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995)).  CRC argues that because these exhibits post-date the car accident underlying this case, they are not probative of whether Kyle Neumiller's alleged misuse of CRC Duster was an act that CRC could have reasonably anticipated was likely to result in harm to others.  The Court agrees.  Foreseeability is relevant to the proximate cause analysis.  *See id.* at *6–7.  McDougall's proposed post-date incidents are not probative of foreseeability, as they happened after the at-issue accident.  Evidence of substantially similar incidents are admissible so long as they do not "raise extraneous controversial points, lead to a confusion of issues, and present undue prejudice disproportionate to its usefulness." *Crump v. Versa Prods., Inc.*, 400 F.3d 1104, 1109 (8th Cir. 2005).  Here, the Court finds McDougall's proposed exhibits risk confusing the jury on the foreseeability issue and resulting in undue prejudice, especially the exhibit regarding the *Berry* case.  As a result, the Court will exclude McDougall's proposed post-date incidents.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion in Limine to Exclude Other-Incidents Evidence [Docket No. 182] is **GRANTED in part**, such that Plaintiff's Proposed Post-Incident Exhibits [Docket No. 223-1] are excluded.

DATED:  April 17, 2024
at Minneapolis, Minnesota.

                                              JOHN R. TUNHEIM
                                          United States District Judge